**In re Jerald Patrick GALLAGHER Sharon Lee McQueen Gallagher, Debtors.**

**Arthur B. FEDERMAN, Trustee, Plaintiff,**

v.

**Jerald Patrick GALLAGHER, et al., Defendants,**

and

**Air Line Pilots Association, Intervenors.**

**Bankruptcy No. 86–03874–SJ. Adv. No. 86–0569–SJ.**

United States Bankruptcy Court, W.D. Missouri, W.D.

July 14, 1989.

Arthur B. Federman, Mark Stingley, Linde, Thomson, Fairchild Langworth, Kohn & Van Dyke, Kansas City, Mo., for plaintiff/trustee.

Julie R. Cooper, North Kansas City, Mo., for debtors, Gallagher.

Larry McEnroe, Trans World Airlines, Inc., Kansas City, Mo., Joseph T. Moldovan, Baer Marks & Upham, New York City, for Trans World Airlines.

Judy K. Mencher, Goodwin, Proctor & Hoar, Boston, Mass., for Boston Safe Deposit & Trust Co.

Michael Abram, Michael Winston, Cohen, Weiss and Simon, New York City, William G. Beck, Kansas City, Mo., for Air Line Pilots Ass'n.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN M. SEE, Bankruptcy Judge.

The matter before the court is the Chapter 7 Trustee's complaint for turnover of funds in three pension plans in which Jerald Patrick Gallagher ("Gallagher"), one of the debtors in Bankruptcy Case No. 86–03874–SJ, is a member and beneficiary. Also joined as defendants are Trans World Airlines ("TWA"), Gallagher's employer and the administrator for each of the pension plans at issue, and Boston Safe Deposit & Trust Company and Morgan Guarantee Trust Company of New York, the trustees of the pension plans at issue ("Plan Trustees"). The Air Line Pilots Association International ("ALPA"), the airline pilots union, appears as intervenor. The Court has jurisdiction over this matter and enters its final order and judgment pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

### FINDINGS OF FACT

1. Gallagher began his employment for TWA in 1966. As a pilot for TWA, Gallagher has an interest in three pension/retirement plans: i) Retirement Plan for Pilots and Flight Engineers ("Plan A"); ii) Trust Annuity Plan for Pilots ("Plan B"); and iii) Trust Plan for Flight Engineers ("Plan C"), (hereinafter collectively referred to as the "Plans").

2. ALPA negotiated the terms of the Plans with TWA. The Plans comply with the provisions of The Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., contain the antialienation provisions prescribed by 29 U.S.C. § 1056(d), and qualify for beneficial tax treatment pursuant to 26 U.S.C. §§ 401(a) and 501(a).

3. During his employment with TWA, Gallagher never served as an officer, director, or shareholder of TWA, nor did he serve as an officer or director of ALPA.

4. Gallagher's bankruptcy case was filed on September 3, 1986; the adversary action herein was filed December 10, 1986; trial of the action was held on April 2, 1987. At the time he filed his petition, Gallagher was on inactive flying status with TWA due to illness; by the time that the trial was held, Gallagher had regained active status.

5. At the time of trial, Gallagher was fifty-one years old. He and his wife have no minor children and no other dependents. At the time of trial, his monthly living expenses were $2,168.93 and his monthly reaffirmed debt payments were $546.29; thus, his total monthly expenses and debt payments were $2715.22. No testimony

was offered regarding Gallagher's projected income and living expenses. His monthly income at the time of the trial was $4,277.01.

PLAN A

6. Due to his participation in a prior TWA pension plan, Gallagher automatically became a member of Plan A, which became effective October 1, 1981 (Article 3.2, Plan A). Plan A is a qualified defined benefit pension plan created to comply with and satisfy the applicable provisions of 26 U.S.C. § 414(j).

7. TWA made contributions to Plan A on Gallagher's behalf in an amount equal to 4% of Gallagher's monthly earnings (Article 5.1, Plan A), plus any additional amounts necessary to fund the defined benefit pension plan (Article 5.3, Plan A).

8. Plan A provides that Gallagher's interest in benefits vest upon completion of five years of continuous service with TWA, or in the alternative, upon reaching age 45 (Articles 8.1, 8.2, and 8.3, Plan A). Due to both his age and years of continuous service with TWA, Gallagher's interest in Plan A had vested as of the date that he filed bankruptcy.

9. Plan A also provides that if Gallagher had terminated his employment with TWA: i) with less than five years of continuous service; ii) prior to reaching age 45; or iii) as the result of certain disabilities, he would have been paid a cash payment equal to the accumulated contributions made by TWA on his behalf (Article 8.1, Plan A).

10. As a vested member in Plan A, Gallagher is entitled to fund payments and distributions upon: i) retirement; ii) death; or iii) termination of employment. Plan A gives Gallagher various retirement options in that he could retire at age 60, extend his service with TWA beyond age 60 (with TWA's consent), or take early retirement after reaching age 45 ("Normal, extended or early retirement") (Articles 4.1, 4.2, and 4.3, Plan A). Plan A gives Gallagher various options regarding the form of income by which his benefits from Plan A would be paid: i) Automatic Qualified Joint and Survivor Annuity; ii) Joint and Survivor Annuity; iii) Life Annuity: iv) Option Pro-

viding Payments for a Specified Number of Years; and v) Single Life Annuity (Articles 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, and 9.9, Plan A). Furthermore, Gallagher has the option of transferring Retirement Income (as defined in Article 1.7, Plan A) from Plan A to Plan B in order to equalize his benefit payments (Article 9.11, Plan A; Article 5.7, Plan B). In addition, under certain circumstances, Gallagher has the option of taking a lump-sum payment of his contributions in addition to the payment plans described above (Articles 8.4, Plan A).

11. Plan A does not allow any voluntary or involuntary encumbrance or alienation of Gallagher's interest in payments from Plan A (Article 12, Plan A).

12. Plan A states that the validity, construction and rights thereunder are to be governed by the laws of the State of New York. The terms of the Master Trust state that it is to be governed by the laws of the State of Massachusetts.

13. No proof was presented at trial of the total value of Gallagher's interest in Plan A as of September 3, 1986, the date that Gallagher's petition was filed.

PLAN B

14. Due to his participation in a prior TWA pension plan, Gallagher automatically became a member of Plan B, which became effective October 1, 1981 (Article 3.2, Plan B). Plan B is a qualified defined contribution plan created to comply with and satisfy the applicable provisions of 26 U.S.C. § 414(i).

15. TWA made contributions to Plan B on Gallagher's behalf in an amount equal to 11% of Gallagher's monthly earnings (Article 5.4, Plan B). Gallagher has the option, which he had not exercised as of the date of the trial, of contributing up to 10% of his monthly earnings to Plan B (Article 5.1, Plan B). Although TWA's contribution was based entirely on the level of Gallagher's earnings, they did not reduce his salary that was actually paid to him.

16. Plan B provides that Gallagher's interest in benefits vest upon completion of five years of continuous service with TWA, or in the alternative, upon reaching age 45

(Article 8.2, Plan B). Due to both his age and years of continuous service with TWA, Gallagher's interest in Plan B had vested as of the date that he filed bankruptcy.

17. As a vested member in Plan B, Gallagher is entitled to fund payments and distributions upon: i) retirement; ii) death; or iii) termination of employment. Plan B gives Gallagher various retirement options in that he could retire at age 60, extend his service with TWA beyond age 60 (with TWA's consent), or take early retirement after reaching age 45 ("Normal, extended or early retirement") (Articles 4.1, 4.2, 4.3, and 4.4, Plan B). Plan B also gives Gallagher various options regarding the form of income by which his benefits from Plan B would be paid: i) Life Annuity; ii) Option Providing Payments for a Specified Number of Years; iii) Automatic Qualified Joint and Survivor Annuity; iv) Joint and Survivor Annuity; and v) Single Life Option (Articles (9.1, 9.2, 9.3, 9.4, and 9.5, Plan B). Furthermore, Gallagher has the option of transferring Retirement Income into Plan B from Plan A in order to equalize his benefit payments (Article 9.11, Plan A; Article 5.7, Plan B). Furthermore, if Gallagher elects to make contributions to Plan B pursuant to Article 5.1, he has the option of taking a lump-sum payment of his contributions in addition to the payment plans described above (Article 8.6, Plan B). In addition, under certain circumstances, Gallagher has the option of taking a lump-sum payment in addition to the payment plans described above (Article 8.7, Plan B).

18. Plan B does not allow any voluntary or involuntary encumbrance or alienation of Gallagher's interest in payments from Plan B (Article 12, Plan B).

19. Plan B does not contain a clause stating the laws of the state for which its validity, construction and rights thereunder are to be governed; the terms of the Master Trust state that it is to be governed by the laws of the State of Massachusetts.

20. No proof was presented at trial of the total value of Gallagher's interest in Plan B as of September 3, 1986, the date that Gallagher's petition was filed; proof was presented that he would have been entitled to a single sum distribution of $203,926 as of September 1, 1986, two days before the bankruptcy petition was filed on September 3, 1986.

PLAN C

21. Due to his participation in a prior TWA pension plan, Gallagher automatically became a member of Plan C, which became effective October 1, 1981 (Article 3.1, Plan C). Plan C is a qualified defined contribution plan created to comply with and satisfy the applicable provisions of 26 U.S.C. § 414(i).

22. TWA made contributions to Plan C on Gallagher's behalf in an amount equal to 11% of Gallagher's monthly earnings (Article 5.1, Plan C). Gallagher has the option, which he had not exercised as of the date of the trial, of contributing up to 10% of his monthly earnings to Plan C (Articles 5.2, 5.3, and 5.4, Plan B). Although TWA's contribution was based entirely on the level of Gallagher's earnings, they did not reduce his salary that was actually paid to him.

23. Plan C provides that Gallagher's interest in benefits immediately vest. (Articles 8.1 and 8.3, Plan C). Gallagher's interest in Plan C had vested as of the date that he filed bankruptcy.

24. As a vested member in Plan C, Gallagher is entitled to fund payments and distributions upon: i) retirement; ii) death; or iii) termination of employment. Plan C gives Gallagher various retirement options in that he could retire at age 60, extend his service with TWA beyond age 60 (with TWA's consent), or take early retirement after reaching age 50 ("Normal, early optional, or deferred retirement") (Articles 4.1, 4.2, 4.3, and 4.4, Plan C). Plan C also gives Gallagher various options regarding the form in which his benefits from Plan C would be paid: i) Automatic Qualified Joint and Survivor Annuity; ii) Installment Option; iii) Alternative Installment Option; iv) Single Sum Payment Option; and v) Annuity Option (Articles 9.1 and 9.2, Plan C). In addition, under certain circumstances, Gallagher has the option of taking a lump-sum payment in addition to the payment

plans described above (Articles 8.2 and 8.4, Plan C).

25. Plan C does not allow any voluntary or involuntary encumbrance or alienation of Gallagher's interest in payments from Plan C (Article 12, Plan C).

26. Plan C does contain a clause stating the laws of the State of New York shall govern except to the extent governed by federal law.

27. No proof was presented at trial of the value of Gallagher's interest in Plan C as of September 3, 1986, the date that Gallagher's petition was filed; proof was presented that he would have been entitled to a single sum distribution of $5,690 as of September 1, 1986, which was two days before the bankruptcy petition was filed on September 3, 1986.

## CONCLUSIONS OF LAW

In summary, the Court concludes as follows. Gallagher's interests in Plan A, Plan B, and Plan C constitute legal and equitable interests in property that are part of his bankruptcy estate. Neither Plan A, Plan B, nor Plan C constitute spendthrift trusts; accordingly, the provisions of 11 U.S.C. § 541(c)(2) do not prevent the inclusion of Gallagher's interests in Plan A, Plan B and Plan C in his bankruptcy estate. Gallagher's interests in Plan A, Plan B, and Plan C are not exempt pursuant to Mo.Rev. Stat. § 513.430(10)(e). Accordingly, the Trustee is entitled to turnover of those funds equivalent to the interests of Gallagher in Plan A, Plan B, and Plan C as of September 3, 1986, pursuant to 11 U.S.C. § 542(a).

The Court's decision involves the interaction of 11 U.S.C. §§ 522, 541(a), 541(c)(2), and Mo.Rev.Stat. § 513.430. Decisions rendered by the Eighth Circuit, the District Court for the Western District of Missouri, and this Court provide controlling authority and great assistance to the Court in this matter: *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Swanson*, 873 F.2d 1121 (8th Cir.1989); *In re O'Brien*, 94 B.R. 583

(W.D.Mo.1988); and *In re Bartlett*, 67 B.R. 455 (Bankr.W.D.Mo.1986).

*Graham* describes in great detail the method of analyzing pension plans in the bankruptcy context:

1) The bankruptcy estate of a debtor is comprised of all legal and equitable interests of the debtor pursuant to Section 541(a);

2) The interests of a debtor in a spendthrift trust shall be *excluded* from the bankruptcy estate pursuant to Section 541(c)(2), thus never becoming part of the debtor's bankruptcy estate under Section 541(a);

3) The interests that have become part of the estate (those not excluded by Section 541(c)(2)) may be *exempted* from the estate pursuant to Section 522(f).

*Graham*, 726 F.2d at 1271–72. The validity of *Graham* was reaffirmed by the Eight Circuit in *Swanson*.

Thus, in the matter at hand, the issues before the Court are:

1) Are Gallagher's interests in Plan A, Plan B, or Plan C the type of property that is property of his bankruptcy estate?

2) If so, do those interests constitute interests in spendthrift trusts that are excluded from Gallagher's bankruptcy estate?

3) If not, may Gallagher exempt his interests pursuant to Missouri law?

■ In order to achieve the intended policies of the Bankruptcy Code, Section 541(a) is interpreted broadly and Section 541(c)(2) is interpreted narrowly. *Graham*, 726 F.2d at 1270; *Swanson*, 873 F.2d at 1124. Given the broad scope of Section 541(a), Gallagher's interests in the Plans constitute legal and equitable interests that are included in his estate. Even though TWA may not have permitted Gallagher to actually make withdrawals from the Plans as of the date that he filed bankruptcy due to his inactive status,[1] it cannot be said that he had no absolutely no legal or equitable

---

**1.** Testimony was presented at the trial that Gallagher would not have access to his interests in the Plans while on inactive status. However, neither Gallagher, TWA, nor ALPA cited those provisions of the Plans which express this limitation.

interest in each of the Plans at that time. In addition, although TWA made the only contributions to the Plans, Gallagher is vested in all three of the Plans and entitled to benefits which cannot be retracted or denied. He can exercise payment procedure options, make contributions, and receive distributions. Clearly, his interests have monetary value. Indeed, the statutory language at issue in *Swanson,* concerning a state teachers retirement plan, provided, in part, that "all moneys to the credit of the debtors' account belonged to the state of Minnesota." Despite this language, the debtors' interests were found to be property of the estate. *Swanson,* 873 F.2d at 1122–23. Thus, in response to the first issue that the Court must decide, Gallagher's interests in the Plans are the type of property that can be, and hereby are, included in his bankruptcy estate.

The next issue that must be addressed is whether Plan A, Plan B, or Plan C constitute spendthrift trusts. Section 541(c)(2) was intended by Congress to preserve the status of traditional spendthrift trusts as recognized by state law by excluding them from the bankruptcy estates of debtors. *Graham,* 726 F.2d at 1271; *Swanson,* 873 F.2d at 1123. Therefore, each plan must be reviewed independently to determine whether the spendthrift protection is applicable.

■ As the *Swanson* and *O'Brien* courts recognized, a trust that contains spendthrift provisions cannot be a spendthrift trust if:

1) The settlor of the trust is also the beneficiary of the trust;

2) The beneficiary has dominion or control over the trust;

3) The beneficiary may revoke the trust; or

4) The beneficiary has powers in the trust.

*Swanson,* 873 F.2d at 1124; *O'Brien,* 94 B.R. at 587. Gallagher, TWA and ALPA raise the issue as to the application of New York and Massachusetts law to the Plans. Spendthrift trusts are valid trusts under the laws of Missouri, Massachusetts, and New York; however, each of these jurisdictions recognize that trusts containing spendthrift provisions may not qualify as a spendthrift trust if the trusts contain other defects. *O'Brien, supra; State Street Bank v. Reiser,* 7 Mass.App. 633, 389 N.E.2d 768, 770 (1979); *Plymouth Rock Fuel v. Bank of New York,* 91 Misc.2d 837, 398 N.Y.S.2d 814 (1977). In the matter at hand, each of the Plans contain provisions limiting the voluntary and involuntary encumbrance or alienation of Gallagher's interests, which without doubt are characteristic spendthrift provisions. However, the method of analysis prescribed by the Eighth Circuit in *Swanson* leads this court to conclude that each of the Plans are not state law spendthrift trusts, regardless of the application of Missouri, New York or Massachusetts law.

■ Plans B and C clearly are not spendthrift trusts. Both plans give Gallagher the rights and the powers to make voluntary contributions from his earnings in amounts that are almost equal to the contributions that TWA was required to make. Thus, Gallagher has the right of contribution to Plans B and C. These powers effectively made Gallagher a settlor of the trusts represented by Plans A and B, and as such, they are not spendthrift trusts. *Swanson,* 873 F.2d at 1124.

In addition, Plans B and C effectively grant Gallagher the power to revoke the trusts, as well as dominion and control over the assets in the plans. Both Plans B and C have lump-sum payment provisions and also give Gallagher control over the time at when he shall receive his benefits. Thus, he has the power to revoke the trusts. Both Plans B and C allow Gallagher to chose the payment vehicle by which he shall receive benefits; thus, he has dominion and control over trust assets. The Court recognizes that the only lump-sum payment option available under Plan B contains the condition that Gallagher must be on furlough and that he terminate his employment with TWA; the existence of this right of control, however limited, is inimical to Plan B. Plan C not only contains the "furlough" lump-sum option, but it also

grants Gallagher an unfettered single-sum retirement option.

In summary, both Plans B and C contain provisions that render them self-settled trusts, grant Gallagher revocation powers, and give him dominion and control. As such, Plans B and C are not spendthrift trusts. *Swanson, supra.*

■ The provisions of Plan A provide a closer question than that posed by Plans B and C because Plan A does not provide Gallagher with the power to make contributions. Indeed, because Plan A is a benefit pension plan, it differs by definition from Plans B and C, which are contribution plans. *See,* 26 U.S.C. § 414(i) and (j); *Chapter 7 Cases; Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?,* 61 Am.Bankr.L.J. 219, 221–23 (1987). However, Plan A does give Gallagher certain rights and privileges which preclude any conclusion that it is a spendthrift trust. Like Plan B, Plan A gives Gallagher a conditional right to a furlough lump-sum payment; like Plans B and C, Plan A gives Gallagher revocation powers in that he may select the time which he begins to receive benefits, and gives him dominion and control over the form of payment. In addition, Plan A gives Gallagher further dominion and control in that he can transfer funds from Plan A to Plan B to equalize benefit payments. Accordingly, Gallagher, as the beneficiary of Plan A, has sufficient dominion and control over the trust assets of Plan A that does not permit the Court to treat Plan A as a spendthrift trust.

The Court is aware that each of the powers granted to Gallagher in the Plans—contribution, revocation, dominion and control—had not been exercised by Gallagher prior to the trial of the matter. However, it is the *existence* of the powers, rather than the *exercise* of the powers, that denies the Plans spendthrift status. As the Court stated in *Swanson:*

> ... if the beneficiary has the *power* to revoke the trust and exercise dominion and control over the trust res, most juris-

dictions do not give the trust the protections that are generally afforded spendthrift trusts.

(emphasis added) *Swanson,* 873 F.2d at 1123. Indeed, the facts in *Swanson* show that the debtors had not actually exercised their right to terminate their employment, but only had the power to do so. In addition, the Court recognizes that the limited powers granted to Gallagher in the Plans are not as substantial as the powers that the debtor in *Graham* enjoyed; however, as the *Swanson* court held, the ability to control the trust in any way is contrary to the underlying policies of spendthrift trusts. *Swanson,* 873 F.2d at 1124. Furthermore, it is TWA's position that the ability to reach trust assets by reason of termination of employment does not disqualify a spendthrift trust. This argument was rejected by the Eighth Circuit in *Swanson* as the Court expressly found that the control held by the debtors was premised upon termination of employment, and as such was "a very limited right of control". *Swanson, supra.*

The Court also notes that although the contributions of TWA to the Plans did not actually reduce Gallagher's salary, they are substantially based upon his earnings. TWA received a tax deduction for the contributions made to Plan A on Gallagher's behalf; Gallagher will be taxed on the amounts of these contributions once he actually or constructively receives benefits under Plan A. 26 U.S.C. §§ 402(a)(1) and 404(a). Thus, Gallagher essentially deferred earnings and compensation.

> We believe that the Fund is actually a form of deferred compensation, whereas a spendthrift trust is generally used to provide the maintenance and support of its beneficiaries.

*Swanson,* 873 F.2d at 1124. Accordingly, in addition to the reasoning that Plan B and Plan C are self-settled trusts, that Gallagher can revoke the Plans, and that he has dominion and control over the Plans, the Plans do not qualify as spendthrift trusts because contributions made by TWA were essentially deferred compensation.

Thus, in response to the second issue that the Court must decide, neither Plan A, Plan B, nor Plan C constitute spendthrift trusts. The existence of the anti-alienation provisions do not in and of themselves convert the Plans into spendthrift trusts; the inclusion in the Plans of provisions giving Gallagher contribution rights, revocation powers, and control and dominion over assets show that the Plans are not spendthrift trusts. Thus, based upon the provisions in the plans and the Eighth Circuit's direction that Section 541(c)(2) is to be interpreted narrowly, this court concludes that Gallagher's interests in the Plans are not excluded from his bankruptcy estate.

This Court's holding should not be interpreted as a ruling that all pension plans, including ERISA plans, are not spendthrift trusts. Each plan must be independently reviewed. The effect of the Eighth Circuit's decision in *Swanson* will necessarily limit those pension plans that may possibly qualify as spendthrift trusts; however, it is conceivable that a plan may satisfy the spendthrift limitations.

Since the provisions of Section 541(c)(2) do not apply to exclude Gallagher's interests in the Plans from his estate, Section 541(c)(1) is effective. Accordingly, Gallagher's interests in the Plans are property of his bankruptcy estate notwithstanding any provision to the contrary in the Plans. 11 U.S.C. § 541(c)(1)(A).

■ The final issue is whether Gallagher's interest may be exempted from his estate. The provisions of Mo.Rev.Stat. § 513.427 limit Gallagher to exemptions allowed by the laws of the state of Missouri and, except for those allowed under the Bankruptcy Code, exemptions permitted under federal law. Gallagher has attempted to exempt his interests in the Plans under the provisions of Mo.Rev.Stat. § 513.430(10)(e):

> The following property shall be exempt from attachment and execution to the extent of any person's interest therein:
> ... (10) such person's right to receive:

... (e) A payment under a ... pension ... or similar plan ... to the extent reasonably necessary for the support of such person and any dependent of such person ...

These exemption provisions are nearly identical to the federal exemption provisions allowed pursuant to 11 U.S.C. § 522(d)(10)(E).

Thus, the Court, in its discretion, must determine whether the Plans are "reasonably necessary" for the support of Gallagher and his dependents. In this instance, the Court concludes that Gallagher's interests in the Plans are not reasonably necessary for his, and his dependents, support.

This Court established guidelines in determining whether pension plans are reasonably necessary for the support of a debtor in *In re Bartlett*, 67 B.R. 455, 457 (Bankr.W.D.Mo.1986):

1) Debtor's present and anticipated living expenses;

2) Debtor's present and anticipated income from all sources;

3) Age of Debtor and dependents;

4) Health of the debtor and all dependents;

5) Debtor's ability to work and earn a living;

6) Debtor's job skills, training, and education;

7) Debtor's other assets, including exempt assets;

8) Liquidity of other assets;

9) Debtor's ability to save for retirement;

10) Special needs of debtor and dependents; and

11) Debtor's financial obligations, e.g., alimony or support payments.

These guidelines are reviewed within the context that exemptions are not intended to insure against all future contingencies that could possibly lower the debtor's standard of living, and that if the funds are accessible outside of bankruptcy, the debtor must show a present or future need for the funds. *Bartlett*, 67 B.R. at 457.[2]

---

2. The application of the *Bartlett* present needs test requires a showing that funds are reason-

At the time of trial of this matter, Gallagher's monthly income exceeded his monthly expenses by more than $1,500. Gallagher has been a qualified commercial airline pilot for more than twenty years, evidencing an ability to work and a high level of job skills, training and education. At the time of trial, Gallagher was fifty-one years old; as such he was qualified to fly and to earn a commercial airline pilot's salary for at least an additional nine years. Each of the Plans envision deferred retirement, implicitly recognizing that Gallagher may be eligible for employment with TWA beyond age sixty, either as a pilot or otherwise. In addition, even if Gallagher may not continue as a commercial pilot beyond age sixty, there does not appear to be any limitations on his employment in other fields of endeavor. Thus, Gallagher will have at least an additional nine years in which to rebuild his pension as a TWA pilot (and fourteen years until he reaches the routine retirement age of sixty-five). In certain circumstances nine years would not be sufficient to rebuild a retirement fund. However, Gallagher will have substantial discretionary income and earning power such that he has the ability to rebuild his retirement benefits. The Court is aware that Gallagher has had health problems in the past that caused him to take inactive flying status with TWA; however, at the time of trial, he was once again on active duty. Furthermore, the problems do not appear to limit his employment in other fields. In sum, given these factors, and the lack of evidence of Gallagher's present need for the benefits now or in the future, Gallagher's interests in Plans A, B, and C are not exempt under Missouri law.

In addition, there is some question as to whether a state may grant exemption rights to protect pension plans that "relate to" ERISA. In *Mackey v. Lanier Collections*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court held that 29 U.S.C. § 1144(a) preempts any attempt by the states to protect vacation and holiday funds from garnishment. One court has interpreted these provision to hold that state law exemptions cannot be used to exempt ERISA benefits. *In re Komet*, 93 B.R. 498 (Bankr.W.D.Tex.1988). Another analysis has suggested that, in certain circumstances, a debtor may not be entitled to any exemption rights in pension plans. *Supreme Court Decision Suggests Arizona's Pension Plan Exemption Statute is Preempted by ERISA*, Norton Bankruptcy Law Adviser, 1988–No. 9, pp. 2–3. However, given the conclusion of the Court that Gallagher would not be entitled to exempt his interests in the Plans under Missouri law, it is not necessary for the Court to rule on this issue.

Gallagher, TWA, and ALPA generally emphasize the benefits Congress intended to confer upon individuals under ERISA. The provisions of the Bankruptcy Code likewise grant substantial benefits to individuals. However, bankruptcy benefits are not conferred without burden to the debtor, among which may involve the loss of non-exempt assets. In this case, one of the costs that Gallagher must bear in exchange for the enjoyment of his bankruptcy benefits is the loss of his non-exempt prepetition pension benefits.

■ Gallagher, TWA and ALPA also raise the issue of the tax impact that this Court's ruling will have on TWA and non-debtor members of the Plans, citing as precedent Internal Revenue Service Private Letter Ruling 8131020 (despite the statutory prohibition on the reliance of letter rulings as precedent. 26 U.S.C. § 6110(j)(3)). The provisions of the Bankruptcy Code, and the precedent established in this circuit, do not permit this Court to either except or exempt the interests of a debtor in a pension plan because of the

---

ably necessary for support when they are available to the debtor, either at the time of bankruptcy or at the time of retirement. For example, if a debtor has an IRA or Keogh account, he has access to the that account at the time of bankruptcy, subject to withdrawal penalty. If the debtor presents evidence that those funds

are necessary for support at the time of the bankruptcy, they can be exempted. If the funds are not accessible at the time of bankruptcy, the debtor may only exempt those funds upon a showing that they are reasonably necessary for support at retirement, since that is when the funds would be available.

contingent potential tax ramifications on nondebtors. In addition, the turnover of funds to a Chapter 7 trustee is not detrimental to the anti-alienation provisions of ERISA. Indeed, several implicit exceptions to federal antialienation provisions are recognized and accepted such as settlements of contested ERISA cases, court ordered divorce settlement and support payments, and garnishment to recover funds from employee engaged in criminal conduct. *Stobnicki v. Textron*, 868 F.2d 1460 (5th Cir.1989); *St. Paul Fire and Marine Insurance v. Cox*, 752 F.2d 550 (11th Cir. 1985). Accordingly, the issuance of a turnover order by this Court is not an event that causes disqualification of the Plans. *See, Regan v. Ross*, 691 F.2d 81 (2nd Cir. 1982); *In re Babo*, 97 B.R. 827 (Bankr.W. D.Pa.1989); *In re Gribben*, 84 B.R. 494 (S.D.Ohio, 1988); *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill.1983).

■ The last matter which this Court must address is the value of the interests which must be turned over to the trustee. Pursuant to Section 541(a), Gallagher's estate is comprised of those interests existing as of the date in which the case was filed. Accordingly, contributions to the Plans made by TWA subsequent to September 3, 1986 are not included in Gallagher's estate and shall not be turned over. In addition, the turnover order will result in the creation of a tax obligation and penalty for the estate. *See, In re Kochell*, 804 F.2d 84 (7th Cir.1986). Thus, the Trustee is entitled to turnover of funds representing Gallagher's interests valued as of September 3, 1986, from which he shall pay those tax obligations and penalties incurred by the estate. The Court notes that evidence was presented at trial regarding the amount of lump-sum payments from Plans B and C effective September 1, 1986; it is possible that no contributions were made in that two-day period prior to the filing of Gallagher's petition and that the amount of funds that must be turned over to the Trustee from Plans B and C are equal to the stated September 1, 1986 amounts. There was no evidence presented regarding a lump sum payment amount from Plan A; this amount can be determined by the par-

ties as a function of the equivalent actuarial value of Gallagher's accrued vested benefit as of September 3, 1986, on the basis of 1.5% over the interest rate of the Pension Benefit Guaranty Corporation for immediate annuities, prevailing as of September 3, 1986, and the mortality table used by the Actuary as of September 3, 1986 (*See*, Article 8.4, Plan A).

### ORDER

WHEREFORE, IT IS HEREBY ORDERED that the Trustee is entitled to judgment in the amount equal to Gallagher's accrued vested interests in Plans A, B, and C, as of September 3, 1986, plus interest that has accrued at the judgment rate from and after December 10, 1986; it is further

ORDERED that the trustee shall pay the tax obligations and penalties incurred by the estate as the result of the turnover ordered herein.