In re Frank J. TAYLOR, Debtor.

Dennis CURRELL, Trustee, Plaintiff,

v.

Frank J. TAYLOR; Northwest Airlines, Inc. Pilot's Pension Plan; Northwest Airlines, Inc. Administrator; and State Street Bank and Trust Company, Trustee, Defendants.

Bankruptcy No. L–87–01882C.
Adv. No. L–88–0003C.

United States Bankruptcy Court,
N.D. Iowa.

July 31, 1990.

---

Frank J. Taylor, Las Vegas, Nev., pro se.

Dennis Currell, Eells & Peiffer, Cedar Rapids, Iowa, Trustee.

David Baker, Cedar Rapids, Iowa, for trustee.

Thomas Peffer, Cedar Rapids, Iowa, for Northwest Airlines, Inc. Pilot's Pension Plan, Northwest Airlines, Inc. Admin., and State Street Bank and Trust Co.

*Ruling re: Trustee's Motion For Partial Summary Judgment and Defendants' Cross–Motion For Summary Judgment*

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is the motion for partial summary judgment filed by the Chapter 7 Trustee, Dennis Currell. The Trustee seeks partial summary judgment on the adversary complaint filed January 7, 1988. The Debtor, Frank J. Taylor, has filed a resistance to the Trustee's motion. The other defendants named in the complaint have filed a cross-motion for summary judgment and a resistance to the Trustee's motion. Those defendants are Northwest Airlines, Inc., Pilot's Pension Plan, Northwest Airlines, Inc., Administrator, and State Street Bank and Trust Company, Trustee (collectively referred to as "Northwest"). This is a core proceeding under 28 U.S.C. section 157(b)(2)(B) and (E). The following constitutes findings of fact and conclusions of law pursuant to Fed.R. Bankr.P. 7052.

### Background

1. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 4, 1987.

2. On January 7, 1988, the Trustee filed an adversary complaint alleging in part that (1) the Debtor possesses an interest in a "Pilot's Pension Plan" ("the pension plan") established and administered by Northwest; (2) the Debtor's interest in the pension plan is property of the bankruptcy

estate under 11 U.S.C. section 541; and (3) the defendants should be ordered to turn over the Debtor's interest in the plan.

3. Default judgments were entered against all of the defendants on February 12, 1988. On July 22, 1988, this Court entered an order vacating the default judgments against Northwest Airlines, Inc., Pilot's Pension Plan, and Northwest Airlines, Inc., Administrator. That order was affirmed by the United States District Court for the Northern District of Iowa on March 6, 1989. On March 28, 1989, this Court entered an order vacating the default judgment against State Street Bank and Trust Company, Trustee. The default judgment against Frank J. Taylor has not been set aside.

4. Northwest filed its answer to the complaint on June 30, 1989.

5. The Trustee filed a motion for partial summary judgment on May 15, 1990. Paragraph 3 of the motion states that "[s]ummary judgment is sought only on the issue of the Estate's interest in the Debtor's pension plan and the ability of the Trustee to compel turnover of that interest. A judgment for a specific dollar figure is not being sought at this time."

6. The Trustee and Northwest have stipulated to the following facts:

a. On September 4, 1987, Frank J. Taylor was an employee of Northwest Airlines, Inc.

b. The Air Line Pilots Association International ("ALPA") has been designated by the pilots employed by Northwest Airlines, Inc. to represent such pilots in the negotiation and execution of collective bargaining agreements with the company as to hours of labor, wages, and other employment conditions covering pilots in the employment of Northwest Airlines, Inc.

c. ALPA has been such designated representative on behalf of the pilots since July 1, 1983.

d. Frank J. Taylor is a pilot of Northwest Airlines, Inc. represented by ALPA.

e. From July 1, 1983 through September 4, 1987, the terms of employment of Frank J. Taylor were governed by an agreement between Northwest Airlines, Inc. and the air line pilots in the service of Northwest Airlines, Inc. as represented by ALPA ("the Agreement").

f. The Agreement, or other Agreements incorporated by reference therein, required Northwest Airlines, Inc. to maintain a pension plan for the benefit of the pilots covered by said Agreement.

g. On September 4, 1987, Frank J. Taylor was a participant in the pension plan maintained by Northwest Airlines, Inc. for the benefit of its pilots.

h. The pension plan may not be terminated or amended except by agreement of ALPA.

i. The pension plan is maintained solely for employees of Northwest Airlines, Inc.

7. Northwest filed a resistance to the Trustee's motion and a cross-motion for summary judgment on June 15, 1990.

8. On June 18, 1990, the Trustee and Northwest filed a supplemental stipulation containing the following agreed facts:

a. At the time of the filing of his bankruptcy petition on September 4, 1987, Frank Taylor was a pilot of Northwest Airlines, Inc.

b. Taylor is a participant in the Northwest Airlines, Inc. Retirement Plan for Pilot Employees (Pension Plan).

c. Northwest Airlines, Inc. provides retirement benefits to all of its pilots through a Pension Plan.

d. Northwest Airlines, Inc. made all contributions to the Pension Plan.

e. The Pension Plan entitles Taylor to monthly benefits of $3,994.17 beginning at age 65 or, at his election, to monthly payments of $4,317.22 beginning at age 60, until he reaches age 65 at which time the payments would decrease to $3,994.17 per month.

f. The total value payable to Taylor is not changeable.

g. Taylor is fully vested in the Pension Plan since he has completed five or more years of service for Northwest Airlines, Inc.

h. As a vested participant in the Pension Plan, Taylor is entitled to fund payments and distributions upon retirement, death or termination of employment and attainment of age 50.

i. The Pension Plan was designed by Northwest Airlines, Inc. to comply with the provisions of the Internal Revenue Code as required by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. sections 1001, et seq.

j. The Plan contains an anti-alienation provision as prescribed by 29 U.S.C. section 1056(d), and qualifies for beneficial tax treatment pursuant to 26 U.S.C. sections 401(a) and 501(a) of the Internal Revenue Code.

k. The spendthrift provision of the Pension Plan provides as follows:

6.6 *Spendthrift Provisions.* Except only as provided in this Plan, no Participant shall have any transmissible interest in their pension benefit and shall have no power to alienate, dispose of, pledge or encumber the same except when, and only as to, the portion or portions thereof received by the Participant, nor shall the Employer or the Trustee recognize any assignment thereof, either in whole or in part, nor shall the interest of any Participant or Beneficiary hereunder be subject to attachment, garnishment, execution following judgment or other legal process. This section does not preclude the Employer and the Trustee from complying with a qualified domestic relations order as provided in the Appendix C to this Plan.

1. Minnesota law governs the Pension Plan.

m. To qualify as a pension plan under ERISA, the Plan must provide that the

funds may be obtained pursuant to a qualified domestic relations order.

Discussion and Conclusions of Law

The following issues have been raised in the cross-motions for summary judgment:

(1) Are the Debtor's pension plan benefits included in the bankruptcy estate under 11 U.S.C. section 541(a)(1)[1], or excluded from the estate under section 541(c)(2)[2]?

(2) If the pension plan benefits are included in the bankruptcy estate, does the Trustee have an immediate right to the funds representing the Debtor's interest in the pension plan?

The dispositive issue raised by the parties is whether the Debtor's pension plan benefits are excluded from the bankruptcy estate under 11 U.S.C. section 541(c)(2). To resolve this issue the Court must determine whether the pension plan qualifies as a spendthrift trust under Minnesota law, the "applicable nonbankruptcy law" referred to in section 541(c)(2).[3] "In general terms, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors." *In re Graham,* 726 F.2d 1268, 1271 (8th Cir.1984). Section 541(c)(2) was intended to exclude a debtor's beneficial interest in a "traditional" spendthrift trust, as recognized by state law. *In re Swanson,* 873 F.2d 1121, 1123 (8th Cir. 1989), citing *In re Graham,* 726 F.2d at 1270.

The question presented in *Swanson* was "whether the mandatory contributions made by the debtors and their employers to [a] statutorily created retirement fund are property of their bankruptcy estates for the purposes of 11 U.S.C. section

1. Section 541(a)(1) provides that "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

2. Section 541(c)(2) states that "[a] restriction on the transfer of a beneficial interest of the debtor

in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

3. The parties have stipulated that Minnesota law governs the pension plan. The Court also notes that section 10.3 of the plan provides that "[t]o the extent not preempted by applicable federal law, in interpreting the provisions of this Plan, laws of the State of Minnesota shall be applicable."

541(c)(2)." [4] 873 F.2d at 1122. The debtors in *Swanson* were members of a Teachers Retirement Association ("TRA") created by the State of Minnesota. Their retirement benefits were described as follows:

[The TRA] maintains a Teachers Retirement Fund (Fund), which is distributed, in amounts determined by statute, to qualifying members upon their retirement. The TRA Funds are accumulated through mandatory employee and employer contributions. Every public school teacher covered by the Fund is required to be a member of TRA as a condition of employment.

The debtors in this consolidated appeal, Dennis F. Swanson and Patricia A. Johnson, are both TRA members with rights in the Fund. As of October 3, 1983, Swanson had been a TRA member for 13.6 years and he would have been eligible to receive a refund in the amount of $13,823.73. Johnson, who had been a TRA member for 19 years, would have been eligible to receive a $13,354.83 refund on the date of her bankruptcy filing.

*Id.*, footnote omitted.

The TRA argued that the debtors' contributions to the Fund were excluded from the bankruptcy estate under section 541(c)(2). That argument was based on a Minnesota statute which imposed numerous restrictions on the transfer of TRA funds. The statute specifically provided that the interests of Fund members could not be assigned or reached by levy. The TRA contended that such restrictions were enforceable under "applicable nonbankruptcy law" and thus should be enforceable under section 541(c)(2). 873 F.2d at 1122–23.

The *Swanson* Court began its analysis by noting that spendthrift trusts are recognized and enforced under Minnesota law. *Id.* at 1123, citing *In re Trust Created under Agreement with McLaughlin,* 361 N.W.2d 43, 45 (Minn.1985). *See also Erickson v. Erickson,* 197 Minn. 71, 266 N.W. 161 (1936); *Smith v. Smith,* 312 Minn. 541, 253 N.W.2d 143 (1977); *In re Campbell's Trusts,* 258 N.W.2d 856 (Minn.1977). The leading Minnesota case on the subject of spendthrift trusts is *In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951).[5] The following statement in *Moulton* is quoted in the *Swanson* opinion:

The validity of a spendthrift trust is upheld on the theory that the owner of property in the free exercise of his will in disposing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, who part with nothing in return, to the exclusion of creditors and others.

873 F.2d at 1123, citing 46 N.W.2d at 670. The *Swanson* Court found that "*Moulton* contemplates an arrangement wherein the settlor of the spendthrift trust is not also its beneficiary." *Id.* The Court also noted that "if the beneficiary has the power to revoke the trust and exercise dominion and control over the trust *res*, most jurisdictions do not give the trust the protections that are generally afforded spendthrift trusts." *Id.*, citing *McLean v. Central States, S.E. & S.W. Areas Pension Fund,* 762 F.2d 1204, 1207 (4th Cir.1985) (interpreting Illinois law).

The *Swanson* Court concluded that the TRA Fund did not qualify as a spendthrift trust under Minnesota law. The Court stated that:

We do not believe that the Fund has the necessary characteristics of a traditional spendthrift trust to exclude it from the bankruptcy estate pursuant to section 541(c)(2). Notably, the Fund violates the rule that prohibits the beneficiary of a spendthrift trust from also being its settlor. The fact that the con-

---

4. While the Eighth Circuit framed the issue in terms of the contributions made by the employees and their employers, the District Court only considered "whether *the debtors'* statutorily-mandated contributions to the pension fund are property of the estate...." *Matter of Swanson,* 79 B.R. 422, 423 (D.Minn.1987) (emphasis added).

5. *Moulton* has been described as "the seminal case" on spendthrift trusts under Minnesota law. *See Matter of Swanson,* 79 B.R. 422, 425 (D.Minn.1987).

tributions to the Fund are made, at least in part, by the debtors compels a conclusion that the Fund would not be a valid spendthrift trust under Minnesota law.

In addition, our conclusion that the Fund does not qualify as a spendthrift trust under Minnesota law is compelled by the fact that the debtors are able to exercise dominion and control over the monies in the Fund. TRA members are entitled to a refund of their contributions to the Fund upon termination of employment. While this is a very limited right of control over the Funds, the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying the spendthrift trust. We believe that the Fund is actually a form of deferred compensation, whereas a spendthrift trust is generally used to provide for the maintenance and support of its beneficiaries.

873 F.2d at 1123–24.

The undisputed facts in this case stand in sharp contrast to the facts presented in *Swanson.* The Court notes the following distinctions:

a. The debtors in *Swanson* were required to make contributions to the TRA Fund. On the other hand, Frank J. Taylor may not contribute to the pension plan administered by Northwest. The Trustee and Northwest have stipulated that all contributions to the pension plan were made by Northwest Airlines, Inc.

b. The amounts due to the *Swanson* debtors were calculated by reference to the funds contained in their individual TRA accounts and their years of service as TRA

members. *See Matter of Swanson,* 79 B.R. 422, 424 (D.Minn.1987). Those individual accounts represented the *res* or corpus of the statutory trust. Frank J. Taylor has a vested right to receive monthly payments upon retirement, death, or termination of employment and attainment of age 50, but he does not have an individual account in the Northwest pension plan. While an actuary could determine the present value of the Debtor's future monthly payments, such a determination has not been made and there is no identifiable *res* or corpus in the name of Frank J. Taylor.

c. The debtors in *Swanson* could have received a refund of their total Fund contributions upon termination of employment. By contrast, Frank J. Taylor cannot receive a lump sum distribution of benefits upon termination of employment or retirement from Northwest Airlines, Inc. Under the terms of the pension plan, Taylor could choose the type of annuity that he would receive upon termination or retirement.[6] Section 4.1.1 of the plan lists the following "Optional Forms of Benefits": (a) basic pension; (b) qualified joint and survivor annuity; (c) survivor annuity; (d) contingent annuity; and (e) term certain and life annuity. With certain exceptions not applicable here[7], the pension plan does not provide for the lump sum distribution of benefits.

The *Swanson* Court concluded that the TRA Fund did not qualify as a spendthrift trust under Minnesota law because the Fund contributions were partly self-settled and the TRA members were able to exer-

---

**6.** A copy of "Northwest Airlines, Inc. 1974 Pilots' Amended Pension Plan" is attached to the "Statement of Facts" filed by the Trustee on May 15, 1990.

**7.** Section 3.4.2 of the plan permits a lump sum distribution of $1,750 or less if a retiring participant is not entitled to a deferred vested pension, early retirement pension, or disability retirement pension. The Trustee and Northwest have stipulated that Frank J. Taylor is currently entitled to an early retirement pension upon termination of employment. Section 6.3 of the plan permits a lump sum distribution of $1,750 or less if the participant's retirement allowance amounts to less than $50 per month. The Trustee and Northwest have stipulated that the Debt-

or's monthly benefits would be $3,994.17 if he retired at age 65, or $4,317.22 if he retired at age 60. Section 6.8 of the plan authorizes a lump sum distribution if the aggregate of payments made to a participant is less than the participant's "Employee Contributions Value" as determined under the plan. Section 3 of Schedule B describes the method for converting benefits to a single lump sum for distribution, but it does not specify when such "lump sum settlement[s]" may be made. Section 3(d) of Appendix C authorizes a lump sum distribution to an "alternate payee" (a spouse, former spouse, or other dependent) under a qualified domestic relations order.

cise dominion and control over the Funds. The Trustee contends that the Northwest plan must be disqualified for the same reasons. He argues that:

a. The pension plan is a self-settled trust because consideration is being given in exchange for Northwest's contributions to the plan. The pension plan is a form of deferred compensation resulting from negotiations between Northwest Airlines, Inc. and ALPA. By contrast, a traditional spendthrift trust involves a gift to the beneficiary, "who part[s] with nothing in return...." *In re Moulton's Estate*, 46 N.W.2d at 670.

b. The Debtor has considerable dominion and control over the plan because he has a vested right to determine both the form and the timing of his plan distributions.

c. This case is virtually identical to *In re Gallagher*, 101 B.R. 594 (Bankr.W.D. Mo.1989), which held that a defined benefit plan maintained by TWA was property of the estate subject to turnover.

d. The plan does not qualify as a traditional spendthrift trust because two groups of creditors can reach pension benefits before they are distributed to participants: (1) the Internal Revenue Service, and (2) a former spouse acting under a qualified domestic relations order.

■ The Trustee's contentions are addressed in order below:

a. The argument related to deferred compensation was raised by the bankruptcy trustee in *Baron v. Kodak Retirement Income Plan (In re Steven & Wanda Johnson)*, Chapter 7 No. X87–00359S, Adversary No. X88–0026S (Bankr.N.D.Iowa 8/11/89). Judge William L. Edmonds rejected the argument, reasoning as follows:

The bankruptcy trustee argues that the debtor created his own interest in the ERISA pension plan because it was part of his compensation as a Kodak employee. This, he contends, makes the plan self-settled. The court has been unable to find any cases directly relating to this issue. However, in *Laborers Union Local 1298 of Nassau & Suffolk Counties Vacation Fund vs. Frank L. Lyon & Sons, Inc.*, 66 Misc.2d 1042, 323 N.Y.S.2d 229 (Sup.Ct.1971), the court concluded that vacation benefits which were held in a vacation trust fund established by a collective bargaining agreement, were to be treated as a trust interest and not as earnings.

Adoption of the plaintiff's argument would eliminate any employer's pension plan from classification as a traditional spendthrift trust. This court declines to adopt such a rule.

Slip op. at 8–9. This Court also declines to adopt the rule implied by the Trustee's argument.

■ b. The following statement pertains to the argument concerning the Debtor's dominion and control over the pension plan:

[A] number of courts ... have held that a pension plan participant's ability to access *the whole of his interests* in his employer's plan by voluntarily terminating his employment constitutes sufficient control to disqualify the plan as a spendthrift trust. [Emphasis added].

*In re Balay*, 113 B.R. 429, 438 (Bankr.N.D. Ill.1990), citing *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989); *In re Richardson*, 75 B.R. 601 (Bankr.C.D.Ill.1987); *In re Dagnall*, 78 B.R. 531 (Bankr.C.D.Ill.1987); *In re Sundeen*, 62 B.R. 619 (Bankr.C.D.Ill.1986); *In re Huff*, 61 B.R. 678 (N.D.Ill.1986); *Matter of Rolfe*, 34 B.R. 159 (Bankr.N.D.Ill.1983); *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill. 1983).

The Debtor has a vested right to determine which form of annuity he will receive upon retirement or termination of employment. The Court notes, however, that he lacks the ability to reach "the whole of his interests" in the pension plan. As noted above, there is no identified *res* or corpus in the name of Frank J. Taylor and the terms of the plan do not permit a lump sum distribution of benefits. This is not a case where the beneficiary "has the power to revoke the trust and exercise dominion and control over the trust *res*...." *In re Swanson*, 873 F.2d at 1123, citing *McLean v. Central States, S.E. & S.W. Areas Pen-*

*sion Fund,* 762 F.2d 1204, 1207 (4th Cir. 1985) (interpreting Illinois law). For that reason the Court concludes that the Debtor does not possess sufficient dominion and control over the pension plan to disqualify it as a spendthrift trust under Minnesota law.

c. One of the questions presented in *In re Gallagher,* 101 B.R. 594 (Bankr.W.D. Mo.1989), was whether the debtor's interests in three pension plans administered by TWA were excluded from the bankruptcy estate under section 541(c)(2). 101 B.R. at 599. The bankruptcy court concluded that none of the plans qualified as a spendthrift trust under state law. This Court finds that the *Gallagher* case is distinguishable on its facts. Two of the three pension plans were disqualified because of the debtor's authority to make voluntary contributions and receive lump sum distributions from the plans. 101 B.R. at 600–601. Frank J. Taylor does not have such authority under the terms of the Northwest plan. The third plan involved in *Gallagher* permitted the debtor to (1) receive lump sum payments under certain conditions; (2) control the form and the timing of payments; and (3) transfer funds to another plan. 101 B.R. at 601. While Frank J. Taylor has some control over the form and timing of his annuity benefits, he may not receive any lump sum payments or transfer funds out of the plan. Those are important factual differences which distinguish this case from *Gallagher.*

d. The Trustee's final contention is that the plan cannot qualify as a spendthrift trust because the following groups of creditors can reach pension benefits before they are distributed to participants: (1) the Internal Revenue Service [8], and (2) a former spouse acting under a qualified domestic relations order ("QDRO"). The Trustee and Northwest have stipulated that "[t]o qualify as a pension plan under ERISA, the Plan must provide that the funds may be obtained pursuant to a [QDRO]." They have also stipulated that the plan was designed to comply with the provisions of the Internal Revenue Code as required by ERISA, 29 U.S.C. sections 1001 et seq. The spendthrift provision in the plan provides that "[t]his section does not preclude the Employer and the Trustee from complying with a [QDRO] as provided in Appendix C to this Plan."

Under the Trustee's argument, an ERISA-qualified pension plan could never qualify as a spendthrift trust because of the QDRO provision required by ERISA. The principle is widely accepted, however, that an ERISA plan may be excluded from the bankruptcy estate under section 541(c)(2) if it qualifies as a spendthrift trust under state law. *Jacobs v. Shields,* 116 B.R. 134 (D.Minn.1990), citing *In re Swanson,* 873 F.2d at 1123–24; *McLean v. Central States, S.E. and S.W. Areas Pension Fund,* 762 F.2d at 1206–07; *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir. 1985); *In re Goff,* 706 F.2d 574, 587–88 (5th Cir.1983). *See also In re Boon,* 108 B.R. 697, 701 (W.D.Mo.1989) (collecting cases). In view of those decisions, this Court declines to adopt a rule which would effectively exclude any ERISA-qualified pension plan from the scope of section 541(c)(2).

The bankruptcy court in the *Swanson* case applied the following three-prong test to determine if the TRA Fund qualified as a spendthrift trust under Minnesota law: (1) that the settlor of the trust not be the beneficiary; (2) that the trust contain an alienation provision prohibiting voluntary and involuntary transfers; and (3) that the beneficiary had no present control or dominion over the trust corpus. *Matter of Swanson,* 79 B.R. 422, 425 (D.Minn.1987) (identifying elements drawn from *In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951)). Applying those elements to the undisputed facts in this case, the Court finds that:

> According to Carlson, the trustee has paid monthly benefits to the IRS "[p]roviding that each month the [IRS] provided an order." Wesley Carlson deposition (12/20/89), page 20 at lines 1–16.

---

8. There is no evidence that the terms of the plan specifically authorize payments to the Internal Revenue Service ("IRS"). The plan administrator, Wesley Carlson, has stated that the IRS has obtained the benefits of retired pilots on several occasions by serving orders on the plan trustee.

(1) Frank J. Taylor is not a settlor of the pension plan maintained by Northwest. All contributions to the plan were made by his employer, Northwest Airlines, Inc. For the reasons previously stated, the Court is not persuaded that the plan is partly "self-settled" as a form of deferred compensation. *See also In re Boon*, 108 B.R. at 708 ("[t]he simple fact that an employee voluntarily accepts a job which provides for plan participation does not make that employee the settlor of the plan.").

(2) The plan contains a spendthrift provision (section 6.6) which prohibits voluntary and involuntary transfers. Under Minnesota law, "[n]o particular form of words is necessary to create a spendthrift trust." *In re Swanson*, 873 F.2d at 1123, quoting *In re Moulton's Estate*, 46 N.W.2d at 670.

(3) The Debtor has no present control or dominion over the plan corpus. There is no identified *res* or corpus in the name of Frank J. Taylor. Under the terms of the pension plan, the Debtor cannot obtain a lump sum distribution of benefits upon retirement or termination of employment.

This case is factually indistinguishable from a recent decision of the U.S. District Court for the District of Minnesota. In the case of *Jacobs v. Shields*, 116 B.R. 134 (D.Minn.1990), the court considered the issue of whether a pension plan established by Ford Motor Company qualified as a spendthrift trust. As in this case, the debtor in *Jacobs* contributed no monies to the plan and could not access the plan except through the receipt of monthly pension benefits upon retirement. The court there held that the plan qualified as a spendthrift trust and thus was not property of the estate. Although the case applied Michigan law, the situs of the Ford Motor Company pension plan, the reasoning is equally applicable under Minnesota law.

Having considered the evidence and the arguments of counsel in light of the cases discussed above, the Court concludes that (1) the pension plan maintained by Northwest qualifies as a spendthrift trust under Minnesota law, and (2) the Debtor's interest in the pension plan is excluded from the bankruptcy estate under 11 U.S.C. section 541(c)(2). Based upon the stipulation of facts filed by the parties, there are no material factual issues related to that determination. Entry of summary judgment is therefore appropriate pursuant to FRCP 56 (Bankruptcy Rule 7056).

Since the Court has determined that the pension plan qualifies as a spendthrift trust, it is not necessary to address the other grounds raised by the defendants in support of their contention that the pension plan is not property of the estate. Likewise, since the pension plan is not property of the estate, it is not necessary to address the second issue raised in the motions; i.e., whether the Trustee has an immediate right to the funds representing the Debtor's interest in the pension plan.

### ORDER

IT IS THEREFORE ORDERED AS FOLLOWS:

1. The Trustee's motion for partial summary judgment is denied.

2. The defendants' motion for summary judgment is granted. The Debtor's interest in the pension plan administered by Northwest Airlines, Inc. is not property of debtor's bankruptcy estate.

3. The Trustee's adversary complaint requesting turnover of the pension funds held by Northwest Airlines, Inc., Administrator and State Street Bank and Trust Company, Trustee, is dismissed.

DONE AND ORDERED.