**In re Thomas Buntin THREEWITT and Nancy Lee Threewitt, Debtors.**

**Cortland Q. CLOTFELTER, Plaintiff,**

v.

**CIBA–GEIGY CORPORATION, Irving Trust Company, Thomas Buntin Threewitt, and Nancy Lee Threewitt, Defendants.**

**Civ. No. 82–1536.**

United States District Court, D. Kansas.

Nov. 17, 1982.

Ronald K. Badger, Wichita, Kan., for plaintiff.

Richard T. Foster, Wichita, Kan., Stephan Piga, New York City, for defendants, Ciba-Geigy & Irving Trust.

Robert Feldt, Great Bend, Kan., for defendants, Threewitt.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This matter is now before the Court on appeal from the Bankruptcy Court's ruling that a debtor's Chapter 7 bankruptcy estate includes the debtor's vested, undistributed interest in a pension plan operated by his employer and qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"), P.L. No. 93–406, 88 Stat. 829.

As explained below, the Court concludes that the debtor's interest in the plan is excluded from his bankruptcy estate by virtue of 11 U.S.C. § 541(c)(2), and that the Bankruptcy Court's ruling must therefore be reversed. 20 B.R. 434.

The debtors, Thomas and Nancy Threewitt, filed their voluntary Chapter 7 petition in bankruptcy on March 11, 1981. Mr. Threewitt had, since 1974, participated in the Investment Savings Plan for Salaried Employees of CIBA–GEIGY Corporation and certain affiliated corporations ("Plan"). The Plan meets ERISA pension plan requirements, and is qualified for tax purposes under 26 U.S.C. § 401(a). Under the Plan, CIBA–GEIGY employees may make "basic contributions" of up to five percent of their pay, and CIBA–GEIGY makes corresponding contributions that increase with the amount contributed by the employee and with the length of the employee's service.[1] As of the filing of the bankruptcy petition, Mr. Threewitt's interest in the Plan was about $22,500.00; roughly 61% of that sum is attributable to contributions made to the Plan by Mr. Threewitt himself. The Plan has typical ERISA-required anti-alienation and anti-attachment provisions, but permits employees who have participated in the Plan five or more years, such as Mr. Threewitt, the relatively unrestricted right to make voluntary withdrawals from the Plan,[2] or borrow against their interest in the Plan.[3] Mr. Threewitt has borrowed some $9,500.00 from the Plan, but has made no withdrawals.

The bankruptcy estate generally includes all the debtor's legal or equitable interest in property. 11 U.S.C. § 541(a). An explicit exception, however, is contained in 11 U.S.C. § 541(c)(2), which provides that:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that

---

1. Employees are permitted to make additional contributions unmatched by CIBA–GEIGY, although Mr. Threewitt has not done so.

2. Withdrawals may be made no more frequently than annually, and no more than 50% of CIBA–GEIGY's contributions may be withdrawn. The right to make further contributions to the Plan may be suspended in case of withdrawal for as long as 12 months, depending on the amount withdrawn.

3. The amount borrowed may not exceed 60% of the amount of the employees' vested interest in the Plan.

is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The Bankruptcy Court referred to the legislative history of Section 541(c)(2), found that section described as excluding the debtor's interest in a "spendthrift trust," see H.R.Rep. 95–595, 95th Cong., 1st Sess. 176, 369 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787, and concluded that the exception would apply only to a pension plan that could be described as a "traditional spendthrift trust." The Bankruptcy Court reasoned that the instant plan did not meet that description since Mr. Threewitt's interest in the Plan was largely self-created, and since he could voluntarily withdraw much of his interest in the Plan; finding that the Plan did not fit the "generally accepted definition of ... a spendthrift trust," the Bankruptcy Court ruled that Mr. Threewitt's interest in the Plan fell outside the Section 541(c)(2) exception.

This Court believes, however, that the Bankruptcy Court gave Section 541(c)(2) an unnecessarily narrow construction. Since Congress did not choose to use the term "spendthrift trust" in the language of the section itself, there is no reason to suppose that when the term appears in the legislative history it should be taken as a term of art; it is more reasonable to suppose that the term should be given its ordinary, more general meaning as "inclusive of all trusts which bar creditors from reaching a beneficiary's interest;" 76 Am.Jur.2d *Trusts* § 148, at 389. In the case *sub judice* the relevant question is not whether the Plan looks like a good, old-fashioned spendthrift trust; the relevant question is whether Mr. Threewitt's interest in the Plan would be protected from creditors in an ordinary state court action in which nonbankruptcy law would apply. Under the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee.

The great weight of authority is to the effect that a debtor's interest in an ERISA pension fund is beyond the reach of his general creditors. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 679 F.2d 1307 (9th Cir.1982); *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980); *Commercial Mortgage Insurance, Inc. v. Citizens National Bank,* 526 F.Supp. 510 (N.D.Tex.1981); *Christ Hospital v. Greenwald,* 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980); *Electrical Workers Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154 (Mo.1979); *Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778 (1880); *National Bank of North America v. International Brotherhood of Electrical Workers Local # 3, Pension and Vacation Funds,* 69 A.D.2d 679, 419 N.Y.S.2d 127, 133 (1979) (Rabin, J., dissenting); but *see id.* at 127 (majority opinion) (per curiam). Little would be gained by recapitulating the reasoning of these cases; suffice it to say that this Court is persuaded that Congress intended that general creditors not reach a debtor's interest in an ERISA pension fund, and intended to preempt any state law to the contrary. It accordingly follows, by virtue of Section 541(c)(2), that the bankruptcy trustee may not reach Mr. Threewitt's interest in the Plan.

The Bankruptcy Court also relied on 11 U.S.C. § 522(d)(10)(E) as evidence of congressional intent to include ERISA pension funds in the bankruptcy estates of their beneficiaries; it reasoned that Congress would not bother to exempt a pension fund that was already excluded from the bankruptcy estate. Section 522(d)(10)(E) provides an exemption for:

> The debtor's right to receive ... a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length of service; *and*

(iii) such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954. (Emphasis added).

The Bankruptcy Court's rationale might have had persuasive force were this exemption limited solely, or even primarily, to ERISA or other retirement plans that cannot be reached by general creditors. Such is not the case. Section 522(d)(10)(E) exempts the right to receive payments necessary for support from a wide range of sources, *tax-qualified or not*,[4] including, for example, Christmas stock bonuses paid upon 25 years of service, or profit-sharing plans restricted to senior employees, or an annuity purchased to provide income to a worker disabled in an industrial accident. The Court does not consider it remarkable that Congress did not bother to further complicate an already complex code by taking pains to insure that there was no overlap between Section 522(d)(10)(E) and Section 541(c)(2).

IT IS ACCORDINGLY ORDERED that the Bankruptcy Court's order directing the CIBA–GEIGY Plan trustee to turn over Mr. Threewitt's interest in the Plan to the bankruptcy trustee be vacated, that the Bankruptcy Court's ruling that Mr. Threewitt's interest in the Plan is property of the bankruptcy estate be reversed, and that this case be remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

---

**4.** The only unqualified plans not within the exemption are those set up by "insiders," defined in 11 U.S.C. § 101(25)(A) for individuals employed by a corporation as relatives of the debtor, or the corporation itself if the debtor is an officer, director, or person in control. The Bankruptcy Court seems to have believed that the exemption was available only to tax-qualified plans, perhaps because it read the final "and" of Section 522(d)(10)(E)(ii) as "or."