In re James Henry RALSTIN, Debtor.

Bankruptcy No. 85-20066.

United States Bankruptcy Court,
D. Kansas.

May 30, 1986.

Harry G. Miller, Kansas City, Kan., for debtor.

Eric C. Rajala, Overland Park, Kan., Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

In this action, the trustee Eric C. Rajala, seeks a determination as to whether or not the debtor's interest in an employer-created pension plan (ERISA) is non-exemptible property of the debtor's estate. The debtor, represented by Harry G. Miller, opposes the trustee's claim.

### NATURE AND FACTS OF THE CASE

Debtor James Henry Ralstin, is a medical doctor who is the sole shareholder and director of his closely held professional corporation James Henry Ralstin, M.D., P.A. Pension Plan and Trust, which is qualified under the Employment Retirement Income

Security Act of 1974 (ERISA)[1] and 26 U.S.C. § 401.

On January 17, 1985, debtor filed a Chapter 7 petition for bankruptcy. On that day, he had an interest in his pension plan and trust fund of approximately $82,254.46, of which $32,901.78 was vested. Debtor claimed this interest as exempt under 11 U.S.C. § 541(c)(2) and § 522(b)(2). The trustee objects to debtor's claim of exemption.

## ISSUES INVOLVED

I. WHETHER THE DEBTOR'S INTEREST IN A QUALIFIED ERISA PENSION PLAN SHOULD BE EXCLUDED FROM THE BANKRUPTCY ESTATE UNDER 11 U.S.C. § 541(c)(2).

II. NOTWITHSTANDING THE DEBTOR'S PENSION PLAN UNDER § 541(c)(2), IS THE QUALIFIED ERISA PLAN EXEMPT UNDER 11 U.S.C. § 522?

Under 11 U.S.C. § 541, the filing of a chapter 7 bankruptcy petition creates an estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." However, despite this broad, sweeping language, some property is excluded from the estate under § 541(b) and (c), while other property may become part of the estate, but is subsequently exempted under § 522. The pertinent § 541(c)(2) exclusion states in part as follows:

> "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable non-bankruptcy law* is enforceable in a case under this title." (emphasis added)

This Court is aware there exists a division of opinion as to the correct meaning of "applicable non-bankruptcy law" used in § 541(c)(2). Some courts have generally interpreted this exclusion to apply only to state law concerning spendthrift trusts. See, e.g. *In re Goff,* 706 F.2d 574 (5th Cir.1983); *In re Graham,* 726 F.2d 1268

(8th Cir.1984); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985).

Other courts, including the District Court of Kansas, have held that if Congress had intended § 541(c)(2) to only apply to state spendthrift trusts, the term "spendthrift trust" would have appeared in the statute, rather than the phrase "applicable non-bankruptcy law." These courts hold that traditional state spendthrift trusts, as well as ERISA-qualifying pension plans containing anti-alienation provisions should be excluded from the bankruptcy estate. See, e.g. *In re Threewitt,* 24 B.R. 927 (Bankr.D.C.Kan.1982); *In re Phillips,* 34 B.R. 543 (Bankr.S.D.Ohio 1983); *In re Pruitt,* 30 B.R. 330 (Bankr.Co.1983); *In re Holt,* 32 B.R. 767 (Bankr.E.D.Tenn.1983); *In re Rogers,* 24 B.R. 181 (Bankr.Ariz.1982).

At issue appears to be the congressional intent and legislative history of § 541(c)(2). A review of the pertinent House and Senate Reports does not substantiate the conclusion that *only* trusts which technically conform to the requirements of a state spendthrift trust should be excluded from the bankruptcy estate. See, H.R.Rep. No. 595, 95th Cong., 2d Sess. 176, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6136. Sen.Rep. No. 989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5869.

The term "spendthrift trust" does not appear in any relevant section of the Bankruptcy Code, and in fact, is not mentioned except in reports of the House and Senate. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 176 (1977); Sen.Rep. No. 989, 95th Cong., 2d Sess., 83 (1978). These reports clarify that § 541(c)(2) was intended to continue the exclusion of *spendthrift and support trusts* to the extent they are protected from creditors under applicable state law. See, Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc. No. 93-137, 93rd Cong., 1st Sess. Part I at page 193.

It is difficult to see how other courts can construe section 541(c)(2) so restrictively.

---

1. P.L. No. 93-406, 88 Stat. 829, 29 U.S.C. § 1056    *et. seq.*

It is a well-settled principle of statutory construction that statutes should not be extended to cover matters not specifically addressed, and that a statute should foster the purpose of legislation. *U.S. v. Oregon,* 366 U.S. 643 at 648, 81 S.Ct. 1278 at 1280, 6 L.Ed.2d 575 (1961). But, what was the purpose of ERISA legislation?

Many courts have carefully examined ERISA's legislative purpose and its history. See, *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980); *Commercial Mortg. Ins. Inc. v. Citizens National Bank,* 526 F.Supp. 510 (N.D.Tex.1981). However, the United States Supreme Court recently reiterated ERISA's intent in *Connolly v. Pension Benefit Guaranty Corporation,* — U.S. —, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). The High Court stated:

> "Congress enacted ERISA in 1974 to provide comprehensive regulation for private pension plans. In addition to prescribing standards for the funding, management, and benefit provisions of these plans, ERISA also established a system of pension benefit insurance. This 'comprehensive and reticulated statute' was designed 'to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.... Congress wanted to guarantee that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it." ' Id. [467 U.S. 717] at 720, [104 S.Ct. 2709, 2713, 81 L.Ed.2d 601] quoting *Nachman Corporation v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 361–362, 374–375 [100 S.Ct. 1723, 1726, 1732–1733, 64 L.Ed.2d 354] (1980) (citations omitted)." Id. at page 1020.

In addition to safeguarding pension benefits, ERISA was also enacted to regulate employee benefit plans in a uniform and systematic manner, free of conflicting state and local laws. 29 U.S.C. § 1144(a) (1982) preempts state law applicable to pension plans qualified under ERISA. See, *Wadsworth v. Whaland,* 562 F.2d 70, 77 (1st Cir.1977), cert. denied, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978). Furthermore, 29 U.S.C. § 1132(e) gives federal courts exclusive jurisdiction to enjoin violations of employee benefit rights or terms of ERISA pension plans.

ERISA's legislative history to achieve uniformity among pension plans is underscored by the comments of the Chairman of the Subcommittee of the House Committee on Education and Labor, who said,

> "... (T)he crowning achievement of this (ERISA) legislation (is) the reservation to federal authority the sole power to regulate the field of employee benefit plans. With the (federal) preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent state and local regulation." 120 Cong.Rec. 29197 (1974).

In light of this legislative history, this Court finds that Congress did not intend every qualified ERISA plan to be included in the bankruptcy estate unless each provision met the varied and technical requirements of state spendthrift trust law.

This Court agrees with the District Court of Kansas in the case of *In re Threewitt,* supra. The crucial question should not be whether the pension plan qualifies as a state spendthrift[2] but should instead be whether the debtor's interest in qualified ERISA plans are beyond the reach of general creditors in non-bankruptcy proceedings. *In re Threewitt,* supra, at 927. See also, *Smith v. Mirman,* 749 F.2d 181 (4th Cir.1984); *Tenneco Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688 (4th Cir. 1983); *General Motors Corp. v. Buha,* su-

---

2. The 1986 Kansas legislature has amended K.S.A. 60–2308 and K.S.A. 60–2312 which will be effective on July 1, 1986. Although, at this time, they have no legal effect the Court must note that it is cognizant of their existence.

pra, at 463; *Commercial National Mortg. Insur., Inc. v. Citizens National Bank,* supra at 516.

In *Threewitt,* the Court held that the anti-alienation provisions of an ERISA plan that are enforceable against general creditors are likewise enforceable against the bankruptcy trustee. *Id* at 929. There the Court said:

"The great weight of authority is to the effect that a debtor's interest in an ERISA pension fund is beyond the reach of his general creditors. See *Franchise Tax Board v. Construction Laborers Vacation Trust,* 679 F.2d 1307 (9th Cir. 1982); *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980); *Commercial Mortgage Insurance, Inc. v. Citizens National Bank,* 526 F.Supp. 510 (N.D. Tex.1981); *Christ Hospital v. Greenwald,* 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980); *Electrical Workers Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154 (Mo.1979); *Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778 (1880); *National Bank of North America v. International Brotherhood of Electrical Workers Local # 3, Pension and Vacation Funds,* 69 A.D.2d 679, 419 N.Y.S.2d 127, 133 (1979) (Rabin, J., dissenting); but see id. at 127 (majority opinion) (per curiam). Little would be gained by recapitulating the reasoning of these cases; suffice it to say that this Court is persuaded that Congress intended that general creditors not reach a debtor's interest in an ERISA pension fund, and intended to preempt any state law to the contrary. It accordingly follows, by virtue of Section 541(c)(2), that the bankruptcy trustee may not reach Mr. Threewitt's interest in the Plan."

■ The trustee in the instant case concedes that debtor's pension plan and trust contains the appropriate restrictions on alienation to qualify under these statutes. The Court therefore finds that the alienation restrictions are enforceable against general creditors, and are therefore enforceable against the trustee. The trustee has no greater rights to the debtor's funds than do general creditors.

The Court is mindful of the fact that the present case concerns a self-employed debtor whose ERISA trust was established by his professional corporation.

To explain the foregoing, consideration must be to examine the congressional intent behind the enactment of ERISA, which is to protect individual pensioner's rights. The purpose of ERISA legislation was described as follows in the House Report:

"One of the most important matters of public policy facing the nation today is how to assure that individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire. This legislation is concerned with improving the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income. H.Rep. No. 807, 93rd Cong., 2d Sess. (1974), *reprinted* in 1974 U.S.Code Cong. & Ad.News, pp. 4639, 4670, 4676."

The only method in which a self-employed professional has of guaranteeing his own retirement security is to create an employment trust via a professional or other self controlled corporation, of which he is an employee. Any other mechanism would not meet the requirements of ERISA, and would subject the trust to divestment, complete with the resultant tax consequences and alienation by creditors or other third parties. The Court finds the fact that a recipient is a self-employed professional does not disqualify him from receiving retirement benefits.

In *Commercial Mortgage Insurance Co. v. Citizens National Bank,* supra at 519, the debtor was also the sole professional member of his corporation and the sole trustee of his ERISA qualified trust. The Court, in an extensive analysis of ERISA legislative history, said:

"... (O)ne of the reasons underlying passage of the (ERISA) Act was specifically to allow such professionals to take advantage of tax benefits afforded for pension plans. *In addition, ERISA also intended to eliminate the discrimina-*

*tion in retirement laws against the self-employed.* (Citing Senate Rep. No. 93–127, 93rd Cong., 2d Sess. 3, reprinted in U.S.Code Cong. & Adm.News 4838, 4900; Senate Rep. No. 93–383, 93rd Cong., 2d Sess. 3, reprinted in U.S.Code Cong. & Adm.News 4890)." (emphasis added)

The Court therefore finds, for reasons set out above that the debtor's interest in the fund which was a pension plan of his professional corporation and qualified under the Employee Retirement Income Security Act of 1974 (ERISA), is excluded from the bankruptcy estate.

Since it has been determined that the debtor's beneficial interest in the ERISA Plan can be excluded from the estate, the Court finds it is not necessary to make a determination as to whether or not it is exempt under 11 U.S.C. § 522(b)(2)(A).

**IT IS THEREFORE, BY THE COURT, ORDERED** That the trustee has no interest in the property in the ERISA plan which has been claimed exempt by the debtor.

**IT IS FURTHER BY THE COURT, ORDERED** That judgment be for the debtor James Henry Ralstin, and against the trustee Eric C. Rajala.