In Re Elizabeth Hayes LUCAS, Debtor.

**Jane B. FORBES, Trustee,**
**Plaintiff–Appellee,**

v.

**Elizabeth Hayes LUCAS, Defendant,**

**Holiday Corporation Savings and Retirement Plan, Defendant–Appellant.**

No. 89–6487.

United States Court of Appeals,
Sixth Circuit.

Argued July 31, 1990.

Decided Jan. 14, 1991.

As Amended Feb. 13, 1991.

James Flexer, Nashville, Tenn., for debtor.

Jane B. Forbes, Trustee, Franklin, Tenn., Margaret M. Spencer (argued), Forbes, McKelvey & Spencer, Franklin, Tenn., for plaintiff-appellee.

C. William Denton (argued), David J. Cocke, Borod & Kramer, Charles W. Broun, III, Memphis, Tenn., for defendant-appellant.

Before KENNEDY, BOGGS and SUHRHEINRICH, Circuit Judges.

**598**

SUHRHEINRICH, Circuit Judge.

Holiday Corporation Savings and Retirement Plan ("the Plan") appeals the order of the district court holding that the debtor's interest in an employee benefit plan was property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) and was not excluded under the exception found at § 541(c)(2). Section 541(c)(2) provides that a restriction on the transfer of a beneficial interest of a debtor in a trust that is enforceable under "applicable nonbankruptcy law" is enforceable under the Bankruptcy Code. We reject a narrow interpretation of the phrase "applicable nonbankruptcy law" in § 541(c)(2) as protecting only those debtors' interests which also constitute traditional spendthrift trusts under applicable state law, finding that the plain unambiguous language of the statute encompasses federal law other than that arising under Title 11 as well as state statutory and case law. We therefore hold that a debtor's interests in an ERISA-qualified pension plan are not property of the debtor's bankruptcy estate and thus are not subject to turnover to the trustee in bankruptcy.

### I.

The facts in this case are not in dispute.[1] On December 22, 1986, Elizabeth Hayes Lucas ("debtor") filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Jane B. Forbes, appellee, was appointed trustee ("trustee"). On the schedule of exempted property, debtor listed a $2,000 exemption in a retirement fund. Inquiries by the trustee revealed that debtor's retirement account was with her employer Holiday Inn Corporation ("Holiday") and that the account was fully vested. As a benefit to employees, Holiday offers participation in a savings and retirement plan ("the Plan"). Debtor claims that the Plan is qualified as a defined contribution plan under Sections 401(a) and (k) of the Inter-

nal Revenue Code. It is further alleged that the Plan is subject to the provisions of Titles I, III and IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and contains the anti-alienation clause required by ERISA at 29 U.S.C. § 1056(d)(1).[2]

On April 20, 1987, Holiday provided the trustee with a copy of debtor's account statement, advising that $5,863.08 was vested as of January 1, 1987. During the period between April and August of 1987, debtor requested and received from Holiday withdrawals of $1,500.00 on April 15, 1987, $1,161.13 on May 7, 1987, and $4,829.98 on August 24, 1987.

On or about April 15, 1987, the trustee filed a complaint for turnover of assets against the debtor and Holiday, seeking the portion of vested benefits disbursed to debtor after the petition was filed. On cross-motions for summary judgment, the bankruptcy court stated that the debtor's pension benefits were not excluded from the bankruptcy estate and that the trustee could recover post-petition distributions from the debtor on the pension fund.[3] *Lucas*, 100 B.R. at 971–72.

The bankruptcy court initially stated that it was conceded that debtor's benefits plan was not a spendthrift trust under Tennessee law and was therefore property of the bankruptcy estate at filing on December 22, 1986. In reaching this conclusion the bankruptcy court cited *In re Ridenour*, 45 B.R. 72, 78 (Bankr.E.D.Tenn.1984) and *In re Faulkner*, 79 B.R. 362 (Bankr.E.D.Tenn. 1987), both of which relied on a series of decisions which have interpreted the phrase "applicable nonbankruptcy law" in § 541(c)(2) as protecting only those debtors' interests which constitute traditional spendthrift trusts under applicable state law. The bankruptcy court then found that the debtor's employee benefits were not sub-

---

1. They are set forth in detail in the opinion of the bankruptcy court. *See In re Lucas*, 100 B.R. 969 (Bankr.M.D.Tenn.1989).

2. The parties and the lower courts treated the Holiday Plan as a pension plan. The issue was not briefed below.

3. The bankruptcy court's ruling on the latter issue is not contested by the "the Plan".

ject to exemption [4] under Tenn.Code Ann. § 26–2–111 because the debtor had access to vested benefits greater than that permitted by the statute.[5] Finally, the bankruptcy court held that the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), did not change this result.[6] The district court affirmed without separate opinion 110 B.R. 335.

On appeal to this court, "the Plan" raises the following issues:

1) Whether the district court erred in concluding that debtor's vested pension benefits were property of the estate;

2) Whether the exception contained in Section 541(c)(2) applies only to ERISA-qualified pension plans which also constitute valid spendthrift trusts under relevant state law;

3) If Section 541(c)(2) is not to be so narrowly construed, whether the anti-alienation provisions contained in the Holiday Plan and required by ERISA are enforceable against the trustee; and

4) If Section 541(c)(2) is to be so narrowly construed, whether Tennessee law is preempted by ERISA as to what constitutes a spendthrift trust.

## II.

Since the facts in this case are not in dispute and the issues presented involve purely legal questions, the only standard of review with which we need concern ourselves is that governing a bankruptcy court's conclusions of law. Such rulings by a bankruptcy court are subject to *de novo* review by this court. *United States v. Mississippi Valley Generating Co.*, 364

---

**4.** The Bankruptcy Code also contains exemptions. Under section 522(b) of the Code a debtor may choose between either a "federal" or "state" exemption system unless the individual state has exercised its authority to "opt out" of the federal exemption scheme. 11 U.S.C. § 522(b)(1). If the individual state has opted-out of the federal scheme, the only exemptions available to the debtor are those created by the state. Tennessee is one of a substantial number of states which has opted-out of the federal scheme. *See* Tenn.Code Ann. § 26–2–112; *Rhodes v. Stewart*, 705 F.2d 159, 162 (6th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983); *In re Sellers*, 107 B.R. 152, 153 n. 2 (Bankr.E.D.Tenn.1989).

**5.** Exemptions available to a debtor under Tennessee law include the following:

> In addition to the property exempt under § 26–2–102, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
> (1) The debtor's right to receive:
> ....
> (D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:
> (i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;
> (ii) Such payment is on account of age or length of service; and

> (iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).
> *Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.*

Tenn.Code Ann. § 26–2–111 (1980) (emphasis added).

Specifically, the bankruptcy court held that because the Plan allowed a participant to receive loans up to the entire amount in the account, and to receive a lump sum payment of all the money in his or her account upon "leav[ing] the company, retir[ing] at or after age 55, or becom[ing] permanently disabled," it failed the highlighted proviso of § 26–2–111(1)(D), *supra*, and no Tennessee exemption was available. *Lucas*, 100 B.R. at 971.

**6.** The bankruptcy court emphasized that the anti-garnishment statute at issue in *Mackey* applied to employee *welfare* benefit plans, which are not protected from garnishment by ERISA itself. Distinguishing the instant case the court stated:

> The predicate for the pre-emption question in *Mackey* is not here present: there is no state exemption statute applicable to this debtor that might be pre-empted by ERISA.

*Lucas*, 100 B.R. at 971.

U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988).

### A.

█ The filing of a bankruptcy petition under Title 11 of the United States Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (West 1979 & Supp. 1990). As the legislative history of this section makes clear, the provision was intended to be broad in scope. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (citing S.Rep. No. 95–989, p. 82 (1978); and H.R.Rep. No. 95–595, pp. 367–368 (1977)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323–24.

█ The Code further provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision ... (A) that restricts or conditions transfer of such interest by the debtor[.]" 11 U.S.C. § 541(c)(1)(A) (West Supp.1990). Paragraph 2 of subsection (c), however, states an exception to the general rule of § 541(c)(1)(A): "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (West Supp.1990) (emphasis added). Thus, property of a debtor falling within the definition of this exception is excluded from the bankruptcy estate.

The Plan contends that debtor's interest in the employee benefit plan are excluded from the bankruptcy estate because they are protected by an enforceable restriction on transfer under ERISA which constitutes "applicable nonbankruptcy law" under § 541(c)(2) of the Bankruptcy Code. There is a split among the courts which have considered the issue of whether ERISA constitutes "applicable nonbankruptcy law." Several circuits have interpreted the phrase narrowly, relying on the section's legislative history to hold that § 541(c)(2) was intended to refer only to state "spendthrift trust" law. *See In re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985) *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *Matter of Goff*, 706 F.2d 574 (5th Cir.1983). Under this view, only those ERISA pension plans which qualify as spendthrift trusts under the applicable state law will be excluded from the property of the bankruptcy estate.

By contrast, a minority of courts have held that ERISA does constitute "applicable nonbankruptcy law", and thus ERISA benefits which are subject to that Act's anti-alienation provisions are excluded from the bankruptcy estate under § 541(c)(2). Courts adopting this position have relied on the plain language of the statute, which on its face does not limit "applicable nonbankruptcy law" to state spendthrift trust law. These courts reason that the legislative history does not evidence an attempt by Congress to restrict the scope of § 541(c)(2) to state spendthrift trust law, but simply reflects a ratification of a long-standing prior law honoring state spendthrift trust law. *See In re Moore*, 907 F.2d 1476 (4th Cir.1990); *In re Majul*, 119 B.R. 118 (Bankr.W.D.Tex.1990); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982); *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989); *In re Ralstin*, 61 B.R. 502 (Bankr.D.Kan.1986); *In re Mosley*, 42 B.R. 181 (Bankr.D.N.J.1984); *Warren v. G.M. Scott & Sons*, 34 B.R. 543 (Bankr.S.D.Ohio 1983); *see also In re Kincaid*, 917 F.2d 1162 (9th Cir.1990) (Fletcher, J., concurring).

█ It is an axiom of statutory construction that resort to legislative history is improper when a statute is unambiguous.

> Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but "[i]n the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" Unless exceptional circumstances dictate otherwise, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete."

*Burlington Northern R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citations omitted); *see also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989). Similarly, this court has stated that

> [i]n determining the meaning of legislation, we must look to the plain language of the statute itself. If we find that the statutory language is unambiguous, then that language is regarded as conclusive unless there is a clearly expressed legislative intent to the contrary. If we find that the statute is ambiguous, we then look to its legislative history.

*Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir.1988) (citations omitted).

■ Applying this familiar principle, we find that the language of § 541(c)(2) is clear and unambiguous and that the resort to the legislative history of § 541(c)(2) as an interpretive tool is therefore inappropriate. Thus, we reject the position of those courts which rely on the legislative history to conclude that "applicable nonbankruptcy law" refers exclusively to state spendthrift law. In this regard we are persuaded by the Fourth Circuit's recent decision in *Moore, supra*, which dealt with the same issue before us. In concluding that the debtor's interests in an ERISA-qualified profit sharing and pension plan were not subject to turnover because the Bankruptcy Code recognizes as dispositive the protection of an enforceable restriction on transfer under ERISA, the Fourth Circuit held:

> "Applicable nonbankruptcy law" means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase "applicable nonbankruptcy law" or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.

*Moore*, 907 F.2d at 1477.

The Fourth Circuit based its decision on several factors. First, it noted that a narrow interpretation of the statute, in addition to violating the plain language of § 541(c)(2), is also inconsistent with other uses of the identical phrase throughout the Bankruptcy Code, where the phrase is used to refer to the federal as well as state law. *Moore*, 907 F.2d at 1477.[7] The court reasoned that because words are presumed to have the same meaning in all subsections of the same statute, *Moore*, 907 F.2d at 1478 (citing *Morrison–Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983)), it would be incongruous to give different constructions to an identical phrase at various sections of the Code, especially since the disparate parts of the statute were enacted together in a single comprehensive statute. *Moore*, 907 F.2d at 1478.

Second, the *Moore* court observed that other provisions of the Bankruptcy Code demonstrate that when Congress intended to refer to state law, it did so expressly. *Id.*[8] And, as noted in *Threewitt, supra*, since Congress did not use the term "spendthrift trust" in the language of the section itself, "there is no reason to suppose that when the term appears in the legislative history it should be taken as a term of art...." 24 B.R. at 929. *See also*

---

7. The court provided the following illustrations:

   For example, 11 U.S.C. § 1125(d) states that whether postpetition disclosure statements contain adequate information is "not governed by any otherwise applicable nonbankruptcy law," which includes, *inter alia*, federal securities law. *See In re Stanley Hotel, Inc.*, 13 B.R. 926, 931 (Bkrtcy.D.Colo.1981). Again, 11 U.S.C. § 108(a) extends the time in which a trustee can pursue a cause of action which the debtor could have pursued in accordance with the tolling provisions of "applicable nonbankruptcy law," which includes, *inter alia*, the Racketeer Influenced and Corrupt Organiza-

   tions Act. *See In re Ahead By a Length, Inc.*, 100 B.R. 157, 162–63 (Bkrtcy.S.D.N.Y.1989). *Moore*, 907 F.2d at 1477–78.

8. The *Moore* court gave the following examples: ... 11 U.S.C. § 109(c)(2) limits Chapter 9 filings to entities authorized to be such debtors under "State law"; 11 U.S.C. § 522(b)(1) & (2) ties certain debtor's exemptions to "State law that is applicable"; and 11 U.S.C. § 523(a)(5) denies discharge of any debt for support pursuant to an order "made in accordance with State or territorial law." *See also* 11 U.S.C. §§ 362(b)(12), 903(1), and 1145(a). *Moore*, 907 F.2d at 1478.

*Ralstin, supra,* 61 B.R. at 503 ("[I]f Congress had intended § 541(c)(2) to apply only to state spendthrift trusts, the term 'spendthrift trust' would have appeared in the statute, rather than the phrase 'applicable nonbankruptcy law.' ").

Finally, we also find, as did the Fourth Circuit, that even if the legislative history were relevant, it is inconclusive. *See Moore, supra,* 907 F.2d at 1479. The only place where the term 'spendthrift trust' is found is in the House and Senate reports. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News pp. 5787, 6325 (stating that the term "applicable nonbankruptcy law" in § 541(c)(2) "preserves the restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law"); *and* S.Rep. No. 989, 95th Cong.2d Sess. 83, reported in 1978 U.S.Code Cong. & Admin. News 5787, 5869 (explaining that § 541(c)(2) "preserves restrictions on a transfer of a spendthrift trust....."). Rather than indicating that § 541(c)(2) was intended to refer only to spendthrift trusts, these reports merely clarify that § 541(c)(2) was intended to continue the exclusion of spendthrift trusts to the extent they are protected from creditors under applicable state law. *Ralstin, supra,* 61 B.R. at 503; *Komet, supra,* 104 B.R. at 811 (stating that § 541(c)(2), "far from expressing any particularly new congressional policy, ... simply ratified long-standing prior law honoring state spendthrift trust law. Nothing more need be read into its enactment."); *see also Moore, supra,* 907 F.2d at 1479 (stating that "[a]t most, these passages suggest that Congress intended state spendthrift trust law to be included within the meaning of 'applicable nonbankruptcy law.' "). We agree with the reasoning of the Fourth Circuit in *Moore* and other courts following the minority opinion.

### B.

Our next inquiry is whether ERISA contains an enforceable transfer restriction that would cause it to fall within the meaning of the term "applicable nonbankruptcy law." *See Moore, supra,* 907 F.2d at 1479. This determination requires an interpretation of two coordinate federal statutes— ERISA and the Bankruptcy Code. Our analysis is therefore governed by another principle of statutory construction; namely that we must give full effect to both statutes. *Moore,* 907 F.2d at 1479 (citing *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)).

In *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), the Supreme Court reviewed the legislative purpose of ERISA, stating:

Congress enacted ERISA in 1974 to provide comprehensive regulation for private pension plans. In addition to prescribing standards for the funding, management, and benefit provisions of these plans, ERISA also established a system of pension benefit insurance. This "comprehensive and reticulated statute" was designed to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.... Congress wanted to guarantee that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it.' "

*Connolly,* 475 U.S. at 214, 106 S.Ct. at 1020 (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984) (citation omitted)). One of the means by which ERISA protects workers' pension benefits is through provisions against assignment or alienation of plan benefits.[9] 29 U.S.C. § 1056(d)(1) states

---

**9.** By contrast, there is no federal statutory or regulatory requirement that employee *welfare* benefit plans contain non-assignment or anti-alienation clauses. *Retirement Fund Trust of*

*the Plumbing, Heating and Piping Industry of Southern California v. Franchise Tax Board,* 909 F.2d 1266, 1269 (9th Cir.1990). As noted in *Mackey, supra,* Congress elected to provide pro-

that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Likewise, 26 U.S.C. § 401(a)(13) of the Internal Revenue Code requires that in order for an ERISA pension plan to receive tax-exempt status, it must provide that benefits under the plan may not be assigned or alienated. *See also* Treas.Reg. § 1.403(a)–13(b)(1). Under § 1056(d)(1) then, all encroachments, both voluntary and involuntary, are prohibited. *General Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir.1980). Thus, a debtor's interest in an ERISA pension fund is beyond the reach of his general creditors. *Id.* at 463. We therefore find, as did the *Moore* and *Threewitt* courts, that " '[u]nder the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee.' " *Moore*, 907 F.2d at 1480 (quoting *Threewitt, supra*, 24 B.R. at 929).

This conclusion has several favorable results. First, it harmonizes the Bankruptcy Code, ERISA, and the Internal Revenue Code and gives full effect to the express language of those statutes. Second, it prevents a plan from being subject to disqualification and loss of tax-exempt status when a bankruptcy trustee seeks turnover of a single debtor's interest in a plan. *See Moore*, 907 F.2d at 1480. Finally, it guarantees uniform treatment of benefits throughout the country. As noted by this court in *Buha, supra*:

> It is central to the statutory scheme that ERISA not be subject to state and local laws which might frustrate its goals. This was emphasized by Representative Dent, Chairman of the Subcommittee on Labor of the House Committee on Education and Labor, who stated:
>
>> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regu-

late the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent state and local regulation. 120 Cong. Rec. 29197 (1974).

623 F.2d at 459.

In light of our disposition of this case, we need not address the Plan's remaining arguments. For the reasons stated above, the judgment of the district court is REVERSED and REMANDED. The district court and/or the bankruptcy court is directed to make findings as to whether the Holiday Plan constitutes a pension plan within the meaning of 29 U.S.C. § 1056(d)(1).

---

tection from alienation for pension benefit plans, but not for welfare benefit plans. 486 U.S. at 836–37, 108 S.Ct. at 2188–89. The Court therefore inferred from Congress' silence that the legislature must have intended to allow attachment of welfare benefits plans. *Id.* Thus,

an anti-alienation provision, if contained in a welfare benefit plan, would not be enforceable since the welfare plan cannot create a protection excluded by Congress. *Retirement Fund Trust*, 909 F.2d at 1280.