In re Merrill Wayne BROWN, Debtor,

Charles W. RISKE, Trustee, Plaintiff,

v.

GAYLORD CONTAINER CORPO-
RATION and Merrill Wayne
Brown, Defendants.

Bankruptcy No. 90–05462–BKC–BSS.
Adv. No. 91–4033.

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 31, 1991.

Gary Bollinger, St. Louis, Mo., for defendant/debtor.

Lisa Pickard–Baron, Clayton, Mo., for trustee.

Michael Noakes, Moser & Marsalek, St. Louis, Mo., for Gaylord Container.

### MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This matter comes before this Court on a turnover complaint filed by trustee Charles W. Riske (the "Plaintiff") against debtor Merrill Wayne Brown (the "Debtor") and Gaylord Container Corporation ("Gaylord") (collectively the "Defendants"), the latter being the holder of Mr. Brown's interest in the Gaylord Retirement Savings Plan (the "Plan"). The Defendants dispute the Plaintiff's alleged entitlement to Mr. Brown's interest in the Plan, arguing that such entitlement is negated by the existence of a clause, required by both the Internal Revenue Code and the Employee Retirement Income Security Act (ERISA), which prohibits alienation or attachment of the interest of any Plan participant.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(E).

## DISCUSSION

The facts in this matter are the subject of a joint stipulation filed by the parties. On the date he filed his Chapter 7 petition, the Debtor held an interest in the Plan valued at $17,008.44,[1] the result of automatic monthly withholding from the Debtor's paycheck and a contribution made by Gaylord. The amount withheld from each paycheck is determined by each plan participant, subject to Article 4, Section 4.1 of the Plan, which states that a participant may "elect to reduce his compensation from his employer by an amount equal to not less than one percent nor more than 15 percent ... of his compensation for such plan...." Each plan participant also elects the fund option within the Plan into which his salary reduction contribution is invested. A Plan participant may request withdrawal of Plan funds in certain situations. Pursuant to the terms of the Plan, a participant may request a withdrawal of pre-tax employee contributions, plus earnings attributable to such account prior to December 31, 1988, in the case of "immediate and heavy financial need", as set forth in Section 7.1 of the Plan. Additionally, voluntary after-tax contributions may be withdrawn by the participant upon request to the plan administrator, subject to 30–day advance notice and at the discretion of the plan administrator. For example, of the sum held on behalf of the Debtor, $3,170.26 represented after-tax contributions which the Debtor may withdraw under this procedure. Finally, the Debtor may request a withdrawal of all or any portion of his salary reduction contributions account after age 59½.

Both the Internal Revenue Code and ERISA require that an employee benefit plan contain an anti-alienation clause in order to retain its tax exempt status. Section 401(a)(13) of the Internal Revenue Code of 1974, as amended, provides in pertinent part:

A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.

26 U.S.C. § 401(a)(13)(A).

Accompanying this provision, Section 1.401(a)(13) of the Treasury Regulations states:

A trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution, or any legal or equitable process.

Likewise, Section 206(d)(1) of ERISA provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Thus, in accordance with both of these provisions, Section 10.4 of the Plan states:

The rights or interests of any participant or any participant's beneficiaries to any benefits or future payments under the plan shall not be subject to attachment or garnishment or other legal process by any creditor or any such participant or beneficiary, nor shall any such participant or beneficiary have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or rights which he may expect to receive (contingently or otherwise) under the plan, except as may be required by the tax withholding provisions of the Code or of a state's income tax act or pursuant to a qualified domestic relations order (as defined in Section 414(p) of the Code).

Given the existence of the provisions in ERISA and the Internal Revenue Code and the resultant Plan provision, the Defen-

---

1. Of this amount, the Debtor contributed $10,-936.90, while Gaylord contributed $6,071.54.

dants argue that turnover of the Debtor's assets held in the Plan would cause the Plan as a whole to lose its tax exempt status. Such disqualification, the Defendants argue, would result in adverse tax consequences to all Plan participants and Gaylord itself. This Court is presented with the following two issues:

1. Whether a bankruptcy trustee may obtain the proceeds of a debtor's retirement plan despite the plan's inclusion of an anti-alienation provision, as required by the Internal Revenue Code and the Employee Retirement Income Security Act, and the existence of Section 541(c)(2) of the Bankruptcy Code;

2. If not, whether the Plan constitutes a valid spendthrift trust, thereby prohibiting the Trustee from obtaining the Debtor's proceeds in the Plan pursuant to R.S.Mo. § 456.080.[2]

### I. Section 541(c)(2) and "Applicable Nonbankruptcy Law"

■ Regarding the first issue, Section 541(c)(1) and (c)(2) of the Bankruptcy Code provide:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of the section notwithstanding any provision in an agreement, transfer instrument, applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor;
>
> . . . .
>
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust *that is enforceable under applicable nonbankruptcy law* is enforceable in a case under this title. (emphasis added).

Numerous courts interpreting the latter provision have reached differing conclusions as to whether a trustee may obtain the proceeds of a debtor's retirement plan

despite its inclusion of an anti-alienation provision. Presently there exists a split between the Circuits.

Holding that the phrase "applicable nonbankruptcy law" refers only to state spendthrift trust law are the Fifth, Eighth, Ninth, and Eleventh Circuits. *See In re Goff,* 706 F.2d 574, 582 (5th Cir.1983); *In re Brooks,* 844 F.2d 258, 261 (5th Cir. 1988);[3] *In re Graham,* 726 F.2d 1268, 1271–72 (8th Cir.1984); *In re Swanson,* 873 F.2d 1121, 1123 (8th Cir.1989); *In re Daniel,* 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Kincaid,* 917 F.2d 1162, 1166 (9th Cir.1990); *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir. 1985). In *Matter of Goff,* 706 F.2d 574 (5th Cir.1983), appeal decided 812 F.2d 931ꞏ (5th Cir.1987), the Fifth Circuit enumerated three reasons why the phrase "applicable nonbankruptcy law" contained in Section 541(c)(2) pertained only to state spendthrift law and not to ERISA. First, after an examination of the applicable legislative history, the court found that Congress referred only to the statute's preservation of restrictions on transfer of a spendthrift trust. 706 F.2d at 583–84. Second, the Fifth Circuit noted Congress' failure to include ERISA among other federal laws under which a debtor may exempt property pursuant to Section 522 of the Bankruptcy Code. The court found Congress' failure to list ERISA among these ten other federal exemptions probative of its intent to exclude ERISA from the exemption scheme. *Id.* at 585. Finally, the court noted the language of 29 U.S.C. § 1144(d), which provides: "Nothing in this [Act] shall be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States [except pre-existing federal pension law] or any rule or regulation issued under such law". Based upon this language, the Fifth Circuit concluded that the provisions of the Bankruptcy Code are rendered effective over any ERISA provisions to the contrary. *Id.* at 587. The

---

**2.** The Court need not determine whether the Debtor's interest in the Plan may be exempted from property of the estate as none of the parties has raised this issue.

**3.** *But see In re Majul,* 119 B.R. 118, 122–23 (Bankr.W.D.Tex.1990).

Fifth Circuit subsequently affirmed its result in *In re Brooks*, 844 F.2d 258 (5th Cir.1988). In *In re Graham*, 726 F.2d 1268 (8th Cir.1984), the Eighth Circuit, noting the existence of *Goff*, found dispositive the legislative history of Section 541(c)(2), in which Congress referred only to preservation of restrictions on transfers of spendthrift trusts. 726 F.2d at 1272. However, the court went on to state that it believed any question regarding a debtor's pension rights to be a matter of exemption rather than whether the plan is property of the estate. *Id.*[4] The Eighth Circuit later affirmed *Graham* in *In re Swanson*, 873 F.2d 1121 (8th Cir.1989). Cases in the Ninth and Eleventh Circuits, while offering thorough discussions of *Goff*, *Graham*, and other lower court cases, generally utilize similar reasoning as that discussed above. *See In re Daniel, In re Kincaid, In re Lichstrahl, supra.*

Reaching the opposite conclusion of *Goff* and *Graham*, the Fourth and Sixth Circuits have held that the words "applicable nonbankruptcy law" contained in Section 541(c)(2), plain on their face, are not limited merely to state spendthrift law. Thus, the courts concluded that ERISA comes within the purview of this phrase. *See In re Moore*, 907 F.2d 1476, 1477, 1479 (4th Cir. 1990); *In re Lucas*, 924 F.2d 597, 601–03 (6th Cir.1991). In *In re Moore*, 907 F.2d at 1478, the Fourth Circuit stated that an examination of the legislative history of Section 541(c)(2) is inappropriate because its language is clear on its face. The court further stated that even if it were to examine the legislative history, there is no conclusive evidence to suggest that Congress intended the phrase "applicable nonbankruptcy law" to refer exclusively to state spendthrift trust law. *Id.* at 1479. Finally, the court concluded that because ERISA requires qualified plans to include an anti-alienation provision, it qualifies as "applicable nonbankruptcy law" within the meaning of Section 541(c)(2). *Id.* at 1480. Rely-

ing almost exclusively on *Moore*, the Sixth Circuit in *In re Lucas, supra*, also concluded that an examination of the legislative history of Section 541(c)(2) is inappropriate where its language is clear. 924 F.2d at 601. In addition, the court, like the Fourth Circuit in *Moore*, found that because the purpose of ERISA was to preserve an employee's retirement benefits, as evidenced by its anti-alienation clause requirement, it constituted "applicable nonbankruptcy law". 924 F.2d at 603. Such a result, the court reasoned,

1. harmonized the Bankruptcy Code, ERISA, and the Internal Revenue Code and gave full effect to each statute;

2. prevented disqualification and loss of exempt status of plans subject to an action for turnover by a bankruptcy trustee; and

3. ensured uniform national treatment of employee benefits.

*Id.* at 603.

Numerous lower courts in the Eighth Circuit have followed *Graham* and *Swanson*, and have concluded that the phrase "applicable nonbankruptcy law" contained in Section 541(c)(2) applied only to state spendthrift law and did not include ERISA. *See, e.g., In re Taylor*, 119 B.R. 170, 173 (Bankr.N.D.Iowa 1990); *In re Gallagher*, 101 B.R. 594, 599 (Bankr.W.D.Mo.1989).[5] In contrast, this Court concurs with the holdings and rationales of both *Lucas* and *Moore*, especially in the sense that they harmonize the provisions of the Bankruptcy Code, ERISA, and the Internal Revenue Code, and give each provision its full, intended effect. However, given the existence of *Graham* and *Swanson*, this Court is compelled to follow established precedent and hold that the phrase "applicable nonbankruptcy law" contained in Section 541(c)(2) applies only to state spendthrift

---

4. Thereafter, the court concluded, much like the Fifth Circuit in *Goff*, that Congress' failure to include ERISA in those laws enumerated under Section 522(b)(2)(A) evidenced its intent to ex-

clude that federal law from the exemption scheme. 726 F.2d at 1274.

5. The Court has found no cases in this District which are on point.

trust law and does not include ERISA or the Internal Revenue Code.[6]

## II. Missouri Spendthrift Trust Law

■ Given that ERISA and the Internal Revenue Code are not deemed "applicable nonbankruptcy law" under Section 541(c)(2) and therefore are ineffective against the Trustee's turnover complaint, the Court must determine whether the Trustee is prohibited from obtaining the Debtor's Plan proceeds pursuant to Missouri spendthrift trust law. *See In re Boon*, 108 B.R. 697, 706 (W.D.Mo.1989). R.S.Mo. §§ 456.080(2) and (3) provide:

2. The settlor may provide in the terms of the trust that the interest of the beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

3. A provision restraining the voluntary or involuntary transfer of beneficial interests in a trust will prevent the settlor's creditors from satisfying claims from the trust assets except:

(1) Where the conveyance of assets to the trust was intended to hinder, delay, or defraud creditors or purchasers, pursuant to section 428.020, RSMo; or

(2) To the extent of the settlor's beneficial interest in the trust assets, if at the time the trust was established or amended:

(a) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke or amend the trust; or

(b) The settlor was one of a class of beneficiaries and retained a right to receive specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument.

A spendthrift trust cannot be enforced if:

1. The settlor of the trust is also the beneficiary of the trust;

2. The beneficiary has dominion or control over the trust;

3. The beneficiary may revoke the trust; or

4. The beneficiary has powers in the trust.

*In re Swanson*, 873 F.2d 1121, 1124 (8th Cir.1989); *In re Gallagher*, 101 B.R. 594, 600 (Bankr.W.D.Mo.1989); *In re Schmitt*, 113 B.R. 1007, 1011 (Bankr. W.D.Mo.1990); *In re Davis*, 125 B.R. 242, 245 (Bankr.W.D.Mo.1991).

Thus, based upon these four factors a court must determine:

1. Who is the settlor of the trust; and

2. Whether the debtor has dominion and control over the plan.

*In re Davis*, 125 B.R. at 245.

If the Debtor is not considered the settlor of the plan and has little if any dominion or control over the plan, the Court may characterize it as a spendthrift trust which is exempt from the claims of creditors. This Court concludes that neither prong of the *Davis* test has been satisfied in the instant case.

Regarding the first step, "[t]he settlor of a trust is the person who creates the trust, while the beneficiary is the person for whose benefit the trust is held". *In re Boon*, 108 B.R. 697, 707 (W.D.Mo.1989), *citing Estate of Lamy*, 679 S.W.2d 288, 290 (Mo.1984). In the context of an employer/employee relationship, mere participation in a retirement plan does not make the employee the settlor of the plan. 108 B.R. at 708. However, some courts have held that where the debtor is allowed to make contributions to a retirement plan, the debtor should be considered a settlor of the plan, thereby failing the first step of analysis for determining whether the plan is a spendthrift trust. *See In re Davis*, 125 B.R. 242, 246 (Bankr.W.D.Mo.1991); *In re Gallagher*, 101 B.R. 594, 601 (Bankr. W.D.Mo.1989). In this District, Judge Brauer ruled that the debtor's voluntary contributions to his stock ownership plan defeated its spendthrift characteristics. *In re Wallace*, 66 B.R. 834, 841 (Bankr. E.D.Mo.1986). Thus, he concluded that the

---

**6.** This Court encourages the Eighth Circuit to reexamine its position on this issue based on the *Lucas* and *Moore* decisions.

proceeds of the plan were part of the property of the estate to the extent of the debtor's voluntary contributions. *Id.* However, in *In re Taylor*, 84 B.R. 159, 160 (Bankr.E.D.Mo.1988), Judge Barta distinguished *Wallace* and concluded that because the debtor made required contributions pursuant to a collective bargaining agreement and had no control over the amount contributed or the manner or time of distribution, the debtor's pension plan was not self-settled. Therefore he concluded that the plan qualified as a traditional spendthrift trust and consequently was not an asset of the bankruptcy estate.

In the instant case, Article I, Section 1.1 of the Plan states that the Plan was established by Gaylord Container Limited, corporate predecessor to defendant Gaylord Container Corporation. Section 1.2 of the Plan states:

> *Plan Objectives.* The plan is maintained by the company in order to enable eligible employees of the company and of the company's subsidiaries and other related companies which adopt the plan with the company's consent to share in the profits of the company and its subsidiaries and other related companies, to encourage eligible employees to set aside funds for retirement and to assist in providing plan participants with retirement benefits.

However, despite the fact that the Plan was established for the purpose of promoting employee retirement planning, the Court cannot ignore the fact that under the Plan the Debtor is entitled to and indeed does make substantial contributions to his account. Thus, like the courts in *Wallace, Davis,* and *Gallagher,* this Court finds that the Debtor's voluntary contributions to the Plan make him a settlor of the Plan, thereby defeating its spendthrift characteristics.

Addressing the second step, several Missouri bankruptcy courts have discussed the extent of dominion and control which debtors have had over their respective retirement plan. In *In re Davis*, 125 B.R. 242, 245 (Bankr.W.D.Mo.1991), the court found that the debtor enjoyed sufficient dominion over an ESOP plan to render it an invalid spendthrift trust because the debtor was entitled to vote the shares credited to her ESOP account and because she was entitled to receive a lump sum payment from the ESOP upon termination of her employment. In addition, the court found that the debtor's profit sharing and savings plan were not spendthrift trusts under Missouri law because he was allowed to make withdrawals and receive loans from the plan. 125 B.R. at 246.[7] In *In re Schmitt,* 113 B.R. 1007, 1012–13 (Bankr.W.D.Mo.1990), the court found that the debtor's profit sharing and ownership plan was not a spendthrift trust because of the debtor's ability both to withdraw funds for limited purposes and to determine the termination and method of distribution under the plan. Courts have also found that retirement plans did not constitute spendthrift trusts where the debtor had the ability to immediately obtain his vested portion upon retirement or termination of employment, *In re Mead,* 110 B.R. 434, 440 (Bankr.W.D.Mo. 1990), or because the plan contained provisions allowing for both lump-sum payments and voluntary contributions by the debtor in amounts nearly equal to that contributed by the employer. *In re Gallagher,* 101 B.R. 594, 600–01 (Bankr.W.D.Mo.1989).

In the instant case, the Debtor's participation in the Plan is optional. Should the Debtor choose to participate, the Debtor is allowed to contribute between one and fifteen percent of his pre-tax compensation, which is matched up to a given amount by Gaylord, his employer. In addition, the Debtor is allowed to select the fund option into which his salary is invested, and may withdraw Plan funds in certain situations. For example, the Debtor may withdraw funds in cases of hardship, may request withdrawal of voluntary after-tax contributions, and is entitled to all or any portion of his funds after reaching age 59½. Viewed collectively, these facts convince this Court that the Debtor enjoys a great deal of dominion and control over his interest in the Plan. Thus, because the Debtor is a

---

7. The court also found that the plan was not a spendthrift trust because the debtor, having been given the option to make voluntary contributions, was settlor of the plan.

settlor of the Plan and enjoys great dominion and control over its proceeds, the Court concludes that the Debtor's interest in the Plan does not constitute a spendthrift trust and therefore is not exempt from becoming property of the estate. Accordingly, it is

ORDERED that judgment shall be entered in favor of the PLAINTIFF and against the DEFENDANT;

IT IS FURTHER ORDERED that all proceeds of the Debtor's interest in the Plan shall be turned over to trustee Charles W. Riske.